## TEXAS MEXICAN RAILWAY COMPANY v. SUSIE HIGGINS.

### Decided December 19, 1906.

**1.—Negligence Vel Non—Question of Fact.**

A question of negligence, dependent upon evidence, should never be withdrawn from the jury except in cases where there is no material conflict, and where there is no room for different minds to form different conclusions. Evidence considered, and held to require the submission to the jury of the issue of negligence *vel non* on the part of the defendant.

**2.—Assumed Risk—Negligence of Master.**

The risk assumed by a servant, as incident to his employment, precludes negligence of the master which adds to or augments the risk, unless such negligence and the superadded danger incident thereto were known to the employe, or he had such facts in mind as charged him with such knowledge.

**3.—Contributory Negligence—Question of Fact.**

Ordinarily contributory negligence is a question of fact, and the cases are rare which justify a trial court in withholding such question from the jury. Where the evidence showed that, because of a defective coupling, deceased went between the cars to uncouple them, when by going on the other side of the train he could have uncoupled the cars without going in between them, it raised a question of fact for the jury whether or not he was guilty of contributory negligence in so doing.

**4.—Amount of Verdict—Discretion of Jury—Mortuary Tables.**

Though the amount of the verdict is larger than the earning capacity of the deceased and the mortuary tables would seem to warrant, still the question is at last one for the jury to determine, in the absence of prejudice, passion, fraud or improper motive. Mortuary tables are not conclusive evidence of life expectancy.

**5.—Death—Concurring Causes.**

If death is the resultant of two concurrent causes, it is not essential that both should be negligence in him who put them in operation. His negligence in either, if not contributed to by the deceased, is sufficient to render him liable. This principle illustrated by the facts of this case.

**6.—Charges Approved.**

The main charge and special charge compared, and held not to be contradictory nor to emphasize certain facts or phases of the case.

Appeal from the District Court of Webb County. Tried below before Hon. J. F. Mullally.

*Thos. W. Wood,* for appellant.—The court erred in refusing to instruct the jury, after all of the evidence was in, to find for the defendant, in this: that the evidence was wholly insufficient to show by inference, or otherwise, that the defendant company had failed to discharge its duty as a master to said Steve Higgins, deceased, the injured party, and in this: that the testimony affirmatively shows that the said Steve Higgins' injuries, resulted in his death, were the direct and proximate result of his own reckless conduct in going between the cars at the time of his injuries. Galveston, H. & S. A. Ry. Co. v. Le Gierse, 51 Texas, 201; Houston & T. C. Ry. Co. v. Leslie, 57 Texas, 86; Houston & T. C. Ry. Co. v. Richards, 59 Texas, 373; Houston & T. C. Ry. Co. v. Lovett, 1 Texas App Civ., 65; Galveston, H. & S. A. v. Smith, 2 Texas App.

Civ., 132; Ft. Worth, etc., Ry. Co. v. Taliaferro, 4 Texas App. Civ., 546; Warren v. Southern Kansas Ry., 37 Kans., 413, 15 Pac., 603; Mrs. C. B. Klutts v. Gibson Bros., 6 Texas Law Jour., 202; Houston & T. C. Ry. Co. v. Nixon, 52 Texas, 27; Woods Railway Law, 2 vol., p. 1064; Galveston, H. & S. A. Ry. Co. v. Courtney, 71 S. W. Rep., 307; (to be distinguished) Morris v. Duluth S. S. Ry. Co., 108 Fed. Rep., 747.

*Bertrand & Arnold,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment of $15,000 damages recovered by the appellee for injuries resulting in death inflicted on her husband, Steve Higgins, by the negligence of the appellant.

The petition upon which the judgment was recovered alleged that the acts of negligence which caused deceased's death, who was run over and killed by appellant's cars in its yards at Laredo while in the discharge of his duties as switchman, were: (1) that appellant permitted the switchfrog, where the switching was being done, to remain open, uncovered and unblocked; and (2) that the engineer failed to take correctly and obey the signal given by Higgins just preceding his injuries which caused his death, or that the brakeman of the switching crew failed to repeat the signals given by deceased to the engineer.

The answer of defendant consisted of a general denial, and pleas of assumed risk and contributory negligence.

As the first, second, fourth and fifth assignments of error require consideration of the evidence they will be disposed of first and our findings upon them will constitute our conclusions of fact.

The first complains of the refusal of the court to grant defendant's motion to peremptorily instruct a verdict in its favor after the plaintiff had introduced her evidence; and the second of its failure after all the testimony was introduced to give the jury such peremptory instruction. As these assignments are cognate, they are grouped in appellant's brief and the propositions pertinent to each asserted in its brief under the second, they will be considered together by us in disposing of them.

In our disposition of the questions raised by these assignments we shall be governed by the well-settled principles, that a question of negligence dependent upon evidence should never be withdrawn from the jury except in cases where there is no material conflict, and where there is no room for different minds to form different conclusions; and that it is only when the state of the evidence is such that all reasonable men must draw the same conclusion from it, and unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case must be submitted to the determination of the jury. (Bonn v. Galveston, H. & S. A. Ry., 82 S. W. Rep., 809.)

Now, as to the evidence: we will state first, such facts as we conceive that it establishes beyond controversy. Steve Higgins, plaintiff's husband, on the night of the 12th of November, 1904, while in the discharge of his duties as a switchman in appellant's yards at Laredo, was run over and injured by a train of cars which was operated by appellant's servants, and died in consequence of the injuries so received. He

was an old and experienced switchman, well informed and skilled in the duties of such employment, and had for a number of years been in the service of appellant as night-foreman of its switching crew in its yards where he met his death, and was well acquainted with the situation, condition of the yards and railway tracks, and familiar with the method adopted by appellant and followed by its servants for switching, as well as with signals, the manner of giving them and their import, employed by the members of the switching crew. The tracks in the yards on the night he was killed were in good condition; the frogs were open or unblocked and had been so always during the time of deceased's employment as a switchman at that place. About nine o'clock, just preceding the infliction of deceased's injuries, he went with his crew from appellant's depot to the yards of the International & G. N. Ry. Co. and picked up six or seven cars, three of which were marked "bad order" and were to be carried to the shops for repairs, and carried them to a point near the water tank a little west of appellant's depot. There it became necessary to uncouple and make a switch so as to enable the crew to pick up another "bad order" car to be carried to appellant's shops for repair. Of the two cars to be uncoupled, one was in bad order and was so marked, and the other was in good order. Each of the cars were equipped with patent or automatic couplers, the lever or coupling rod of the one car being on the opposite side from that of the other. The chain which connected the coupling-pin with the coupling-rod of the "bad order" car was broken, and, consequently, could not be uncoupled by the use of such rod. So, to uncouple them one would either go between the cars and pull out the coupling-pin by hand or go on the other side of the train and use the lever on the car which was in good order. While the car with the broken coupling chain was marked in bad order, the particular defect was not indicated, and it does not appear from the evidence that deceased knew that it was in the coupling apparatus until he undertook to uncouple the cars by using the coupling-rod. After endeavoring by the use of the coupling-rod to uncouple the cars, and failing to do so, he went between the cars and tried to pull the coupling-pin out; but, it being fastened tight by reason of the pressure of the cars against it, he was unable to extract it. Whereupon, he gave a signal for the engineer to come ahead, at the same time exclaiming "O come ahead." When this signal was communicated to the engineer he moved the train forward and deceased was run over and injured by the car wheels, in consequence of which he died.

The main controversy is in regard to the kind of signal given by deceased, and whether it was communicated as given to the engineer. There were two different kinds of signals used and recognized by the switching crew, one was called the "kick" signal, and the other the "move slow" signal. Their appellations denote the kind of movement of the train called for by the signalist—the first a quick and sudden, the other a slow and gradual movement. When the signal was received by the engineer, he gave the train a quick and sudden movement, which he claimed was in accordance with the signal communicated to him. The evidence is sufficient to show that the "move slow" signal was given by the deceased, at least it was amply sufficient to warrant the jury in so finding. If, then, it were the signal given, either the other signal was

communicated by the other switchman to the engineer, or he misinterpreted or disregarded it, if imparted to him as given by deceased. The evidence strongly tends to show that the signal was repeated and received by the engineer as originally given, and that he mistook it for the "kick" signal. But as we view the matter, it can make no difference, whether it was miscommunicated by the other switchman or misinterpreted by the engineer, for the jury would be warranted in finding either negligence. Therefore we conclude as facts that the "move slow" signal was given by the deceased while between the cars, and was communicated as given to the engineer and that he either misinterpreted or knowingly disregarded it by giving the train a sudden and quick movement as though the "kick" signal had been communicated; and that this action of the engineer was negligence, imputable to defendant, which proximately caused the death of plaintiff's husband.

But it is contended by appellant that deceased assumed the risk of going between the cars, one of which was marked "bad order," where he knew there was an open frog, to uncouple them. This we conceive from the evidence to be a question of fact, as distinguished from one of law. The risk assumed by a servant as incident to his employment precludes negligence of the master which adds to or augments the risk, unless such negligence and the superadded danger incident thereto were known to the employes, or he had such facts in mind as charged him with such knowledge. He has the right to presume, and act upon the presumption, that his master will exercise ordinary care in the conduct of his business to prevent anything from being done which will increase the danger incident to his employment. If the master fails in the discharge of this duty, and in consequence, the servant is injured by reason of the risk superadded to that which he assumed as incident to his employment, the master must answer for such consequence.

Conceding deceased assumed the risk of going between the cars, where he knew there was an open frog, for the purpose of uncoupling them, the risk assumed could not be so extended as to cover the negligence of the engineer in failing to obey the signal given for the movement of the train. He had the right of presume, and act upon the presumption that his risk would not be enhanced by the failure of the engineer to exercise ordinary care to observe and obey the signal which had been given and communicated to him to slowly move the train.

We have held that this failure of the engineer was negligence which proximately contributed to the injuries which resulted in Higgins' death. Therefore, as the burden of proving the defense of assumed risk rested upon the defendant (International & G. N. Ry. Co. v. Harris, 95 Texas, 346; Bonn v. Galveston, H. & S. A. Ry. Co., 82 S. W. Rep., 813) it can not be held as a matter of law, as distinguished from a question of fact, that deceased was injured by a risk assumed by him as incident to his employment. On the contrary, we find, that his injuries were not proximately caused from any risk assumed by him, but from the negligence of the engineer, imputable to the defendant.

Again it is contended by appellant that deceased was guilty of contributory negligence as a matter of law in failing to go on the other side of the train and use the coupling-rod of the "good order car" instead of endeavoring to do the uncoupling in the manner he undertook to do it.

Contributory negligence is ordinarily a question of fact; and the cases are of very rare occurrence which justify a trial court in withholding such question from the jury. Can it be said from the evidence in this case that it was negligence *per se* for the plaintiff to go between the cars for the purpose of uncoupling them? In the case of Galveston, H. & S. A. Ry. Co. v. Courtney, 71 S. W. Rep., 307, which is similar to this one, this court held that it could not; but that it was a question of fact to be decided by the jury. This method of coupling and uncoupling was the one which generally obtained prior to the time when the act providing for the equipment of cars of railway companies engaged in interstate commerce with automatic couplers went into effect. Though both cars had automatic couplers, on account of the broken chain the coupling apparatus of one of them could not be used. This was on the side where deceased and his switching crew were at work. It does not appear that deceased knew that the coupling-pin could not be pulled out by using the lever until he failed in his effort by that means to uncouple the cars. To have then gone around or over the cars to the other side of the train would have necessarily caused delay in doing appellant's work. Consequently he did nothing more than assume the risk of going between the cars to perform his duty, assuming that it would not be increased by the defendant's servants' failure to discharge theirs. In doing so it was for the jury to say from all the facts, and attendant circumstances, whether he was guilty of contributory negligence. And it having found that he was not guilty of such negligence, so do we.

From what we have said, it follows that the first, second and fourth assignments of error should be overruled.

The only remaining assignment that has relation to the facts, is the fifth, which complains that the verdict is excessive.

Under any view of the evidence, it is a large one, but we have been unable to reach the conclusion that the amount of damages awarded is such as to clearly show prejudice, passion, fraud or improper motive on the part of the jury, whose province it is under our system of jurisprudence, to determine the quántum of damages. It is true that if plaintiff's husband's life were limited in its duration (but for the accident which extinguished it) by the mortuary tables, the sum assessed as damages would be more than such an amount as would be required to yield an annuity of 6 percent interest equal to what she would have been entitled to as her community interest in his annual earnings. But it can not be said as a matter of law that his life would not have extended years beyond the time fixed by actuaries of insurance companies. While such actuaries may "peer into the future far as human eye can see," it is always done in the interest of their masters, and never *pro bono publico*. Give them the age of a man and they calculate, in the interest of the insurer, the probable duration of his life. The man's life may fall short of or may extend many years beyond the period. Hence, while mortuary tables may be taken as evidence of how long a man may live, the question in every case, where one has been deprived of his life by the actionable negligence of another, is left for the jury to determine from the evidence before it and the observation and experience of its members. They are to do the peering themselves, and may or may not, just

as they deem proper, regard or disregard such mortuary tables. Besides, the evidence shows that deceased was wont to give his wife practically all of his earnings, which were some seventy-five dollars, if not more, per month. He was thirty-five years old when killed and had, according to the mortuary tables, a life expectancy of twenty-five years. Then, if what she received from him annually were multiplied by twenty-five, it would take a larger sum than the amount of damages assessed to yield an annuity equal to what she received from him. But the question of the amount of damages was for the jury; compensation for her pecuniary loss was what she was entitled to; and there is no formula nor rule prescribed to govern the jury in its ascertainment. It having assessed the damages at $15,000 we are unable to say that it was more than just compensation for plaintiff's pecuniary loss.

The third assignment of error is directed against the action of the court in giving at the request of plaintiff's counsel the following special charge: "If you believe from the evidence that the foot of Steve Higgins was caught in an open or unblocked frog, and that this was a proximate cause of the injury and death of Steve Higgins; and, if you further believe from the evidence that Steve Higgins gave a come-ahead-slow signal, and that it then was the duty of defendant's switchman to repeat to defendant's engineer such come-ahead-slow signal (if any such signal was given), and, if you further believe from the evidence that defendant's switchman failed to repeat to defendant's engineer such come-ahead-slow signal, if any, and that defendant's switchman gave defendant's engineer a kick signal; and, if you further believe from the evidence that such failure, if any, on the part of defendant's switchman, and that the giving of such kick signal, if any was given, were negligence on the part of defendant's switchman; and, if you further believe from the evidence that such negligence, if any, and the open, unblocked frog, if any, were concurring, proximate causes of the injury and death of Steve Higgins, and together were the direct and proximate causes of the injury and death of said Steve Higgins, and that Steve Higgins was not guilty of any contributory negligence, and did not assume the risk, and that plaintiff was the wife of Steve Higgins and sustained pecuniary loss, as alleged, then the defendant would be liable and you should find your verdict for the plaintiff."

The objection urged is that it is a repetition of the main charge upon the same phase of the case. A comparison between the special and main charge does not sustain the contention. The special charge above copied groups certain evidentiary matters relied upon by the appellee to make out her case and submits them as questions of fact to be passed upon by the jury. If they are proved and concur in causing the death of deceased, and if it appear he was not himself guilty of contributory negligence or that he did not assume the risk of the concurring causes of his death, then the jury are authorized to find for plaintiff. If death is the resultant of two concurrent causes, it is not essential that both should be negligence in him who put them in operation. His negligence in either, if not contributed to by the deceased, is sufficient to render him liable. (Shippers Compress, etc., Co. v. Davidson, 80 S. W. Rep., 1032; Ray v. Pecos & N. T. Ry. Co., 88 S. W. Rep., 460.)

To illustrate, Higgins' death may have been the resultant of the con-

current causes of having his foot caught in the open frog and the rapid movement of the engine in response to the wrong signal given the engineer. Had his foot not been fastened in the frog, he might not have been killed, despite the quick movement of the engine. Though his foot may have been caught in the frog he might not have been killed, if the engine had not been moved in obedience to the quick signal. If, then, in neither of these events he would have been killed, his death was necessarily the resultant of the two concurrent causes, and if both or either of them was produced by the negligence of defendant, or its servants, the plaintiff was entitled under the law to a verdict. (Sprouls v. St. Louis & S. F. Ry. Co., 91 S. W. Rep., 657.) The charge complained of simply grouped these matters and submitted the question to the jury's finding, and enunciated the law following such group of facts as might be found from the evidence by the jury. It is true that these matters were also presented by the main charge, but not in the same way as in the special charge given at plaintiff's request; nor were they presented in such a manner in either as to cause a conflict between them.

The sixth assignment of error complains of the following part of the court's main charge: "If you believe from the evidence in this case that on or about November 12, 1904, Steve Higgins was·in the employ of the defendant, and that he in the discharge of the duties of his employment, went in between some freight cars and received injuries from which he died; and, if you further believe from the evidence that Steve Higgins gave the come-ahead-slow signal, at or about the time that he went in between the cars (if he did); and, if you further believe from the evidence that it was the duty of defendant's engineer to obey such come-ahead-slow signal (if any was given), and that defendant's engineer did not obey such come-ahead-slow signal (if any was given) and that he came ahead fast and kicked the cars; and, if you further believe from the evidence that such failure, if any, of defendant's engineer to obey such come-ahead-slow signal (if any was given), and that such kicking of the cars, if he did, and such coming ahead fast with the cars, if he did, was negligence on the part of defendant's engineer, and that such negligence, if any, was the sole, direct and proximate cause of the injury and death of Steve Higgins; and, if you further believe from the evidence that Steve Higgins was not guilty of any contributory negligence, and that he did not assume the risk of such kicking of the cars and coming ahead fast, if any, and that he was the husband of plaintiff and that plaintiff has sustained pecuniary loss by reason of the death of the said Steve Higgins, then you will return your verdict for the plaintiff, in this: that same unnecessarily assumes the existence of certain facts and is upon the weight of evidence; and, in this: that said charge, taken in connection with the special charge, given at instance of plaintiff unnecessarily emphasizes principles intended to be covered by said charge to the prejudice of defendant, and which tended to confuse and mislead the jury to the injury of this defendant; and in this, that said charge is contradictory to other portions of said charge and special charges given." It is complained that this part of the charge, when taken in connection with the special charge above referred to, is a comment upon the weight of the evidence in that it assumes the existence of

facts, and unnecessarily emphasizes principles intended to be covered by the special charge to the prejudice of the defendant.

What we have said in considering the preceding assignment largely applies to this one. We fail to perceive anything in the charge which would authorize us to pronounce it upon the weight of the evidence; or that would tend towards misleading or confusing the jury, or in any way prejudice it against the defendant.

This disposes of all the assignments of error and requires an affirmance of the judgment.

*Affirmed.*

Application for writ refused.