TEXAS & P. RY. CO. v. MATKIN.†

(Court of Civil Appeals of Texas. Dallas. Dec. 16, 1911. On Request for Finding of Additional Facts, Jan. 6, 1912.)

1. REMOVAL OF CAUSES (§ 17*)—RIGHT OF REMOVAL—WAIVER.

Where defendant railroad company entered its appearance at the appearance term, and answered by general demurrer and general denial, and agreed not to apply for a removal, and after adjournment of the term plaintiff filed an amended original petition, containing an additional charge of negligence, defendant waived its right to removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 10; Dec. Dig. § 17.*]

2. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS—APPLICABILITY TO PLEADINGS AND EVIDENCE.

The petition, in a brakeman's action for personal injuries, alleged that the engineer was negligent in making a sudden stop and throwing plaintiff off a coal car; and the evidence showed that plaintiff gave the engineer a signal to back the train, and, after failing to uncouple the cars by a pin lifter, got on the coal car and lifted the coupling pin with his hands, and that while in that position the train stopped suddenly and threw him off; that such a violent stop was not usual in switching; and that the engineer saw him go between the cars, but not at the time he made the stop. Held, that a charge, submitting the question of the engineer's negligence in suddenly stopping the train, was within the issues.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1137; Dec. Dig. § 291.*]

3. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS—SUBMISSION OF ISSUES.

Plaintiff pleaded negligence in the engineer in making a sudden stop of the train, and in the company for equipping its engine with a straight air brake that could only be used to stop the train by putting on the air in full power, and the evidence raised the issue as to how the straight air brake in use on the engine operated, and the court, after an instruction relating to the negligence of the engineer, instructed as to the negligence of defendant in equipping its engine with a straight air brake. Held that, while the evidence might be given such an effect as would make the instructions inconsistent, plaintiff having alleged two grounds of negligence, it was the court's duty, in view of rule 4 for district and county courts (67 S. W. xx), to submit both issues to the jury for their determination of the existence of either.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1136; Dec. Dig. § 291.*]

4. MASTER AND SERVANT (§ 227*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A brakeman is not free from contributory negligence, because he acts as brakemen ordinarily and customarily do, under the circumstances, but he must have acted with ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 668, 669, 672; Dec. Dig. § 227.*]

5. APPEAL AND ERROR (§ 1064*)—REVIEW—HARMLESS ERROR—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In view of the contributory negligence statute (Acts 31st Leg. 1909 [1st Ex. Sess.] c. 10), providing that contributory negligence of a railroad employé will not absolutely prevent a recovery, error in a charge, authorizing a recovery if plaintiff had acted as brakeman ordinarily or customarily did, under the circumstances, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221-4224; Dec. Dig. § 1064.*]

6. TRIAL (§ 188*)—INSTRUCTIONS—GROUPING FACTS—INFERENCES.

Where the petition, in a brakeman's action for injuries, pleaded negligence in the equipment of the engine with a straight air brake that could only be used to stop the train by putting on its full power, and the evidence on the issue as to whether the brake would work only by application of its full power, and would not permit of a slow or gradual stop, was conflicting, an instruction which groups certain facts presented by the evidence, and tells the jury that if they find certain facts to find for the plaintiff, but which bases a recovery on the theory only that the engine was supplied with a straight air brake which could not be applied with less than its full power, is not objectionable, as grouping facts and authorizing inferences therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 412; Dec. Dig. § 188;* Master and

Servant, Cent. Dig. § 1147; Negligence, Cent. Dig. §§ 356–360.]

**7. MASTER AND SERVANT (§ 213*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—RAILROADS—COUPLING CARS.**

A brakeman, who knew that the automatic brake was not working on the engine, and that a straight air brake was being used, but did not know that the straight air brake was defective, but supposed it could be operated so as to stop the train gradually, went between the cars to uncouple them—a position not ordinarily dangerous—and while in that position was thrown from the car by a sudden stop and injured. *Held* that, under the circumstances, he was not required to quit the work or assume the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 561–563; Dec. Dig. § 213.*]

**8. NEGLIGENCE (§ 101*)—INJURIES TO SERVANT—ACTIONS—CONTRIBUTORY NEGLIGENCE—DAMAGES PROPORTIONED TO NEGLIGENCE.**

Under the express provisions of Acts 31st Leg. 1909 (1st Ex. Sess.) c. 10, relating to the liability of railroad companies to employés, the fact that an injured employé may have been guilty of contributory negligence does not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé.

[Ed. Note.—For other cases, see Negligence. Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. § 101.*]

**9. CONSTITUTIONAL LAW (§ 245*) — MASTER AND SERVANT (§ 11*)—EQUAL PROTECTION OF LAWS—LIABILITY OF RAILROAD COMPANIES TO EMPLOYÉS—CONTRIBUTORY NEGLIGENCE.**

Acts 31st Leg. 1909 (1st Ex. Sess.) c. 10, which provides that in actions against common carriers by railroad for injuries to employés the fact that an employé may have been guilty of contributory negligence does not bar a recovery, but the damage shall be diminished, does not discriminate against any particular railroad company, but applies to all railroads that are common carriers, and is not unconstitutional, as denying the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 245;* Master and Servant, Dec. Dig. § 11.*]

**10. STATUTES (§ 113*)—TITLES—REGULATION OF COMMON CARRIERS.**

Under Const. art. 10, § 2, which declares all railroads to be common carriers, section 2 of Acts 31st Leg. 1909 (1st Ex. Sess.) c. 10, which regulates the liability of common carriers "by railroad," is within the scope of the title of the act, declaring "persons operating railroads in this state to be liable," in certain cases, where there is contributory negligence on the part of an injured employé.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 144; Dec. Dig. § 113.*]

**11. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES—LOSS OF BOTH LEGS.**

In a brakeman's action for injuries, where it appeared that when injured he was a vigorous healthy man, 30 years of age, regularly earning more than $100 a month, that he was a sober and faithful employé, likely to be promoted to the position of conductor at a higher salary, that the injury necessitated the amputation of both legs below the knee, and occasioned intense physical agony, and wholly incapacitated him from performing manual labor, for which only he was fitted by training, a verdict for $35,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 382; Dec. Dig. § 132.*]

**12. DAMAGES (§ 128*)—EXCESSIVE DAMAGES—GROUNDS OF OBJECTION TO AMOUNT.**

The test as to whether a verdict for damages is excessive is whether it is the result of calm and conscientious deliberation, uninfluenced by passion or prejudice.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 354–356; Dec. Dig. § 128.*]

On Request for Finding of Additional Facts.

**13. APPEAL AND ERROR (§ 1122*)—DECISION — FINDINGS — AUTHORITY OF APPELLATE COURT TO MAKE.**

Where the jury, in a brakeman's action for personal injuries, made no specific finding that plaintiff was not guilty of contributory negligence, but returned a general verdict in favor of plaintiff, comprehending a finding on contributory negligence, which was an issue in the case, the Court of Civil Appeals, on request, is authorized to make a finding that he was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by W. A. Matkin against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

F. H. Prendergast, Stafford & Geddie, and Walter Jones, for appellant. Johnson & Edwards, for appellee.

RAINEY, C. J. Appellee brought this suit against the appellant to recover damages for personal injuries received by him while in appellant's employ as brakeman, caused by the negligence of appellant in stopping its train suddenly, throwing appellee under the wheels, which ran over his legs and so mangled them as to necessitate their amputation.

The negligence alleged was: First. That the coupling between the two cars was defective, and necessitated Matkin climbing up between the cars to uncouple them. Second. That defendant was negligent in having only straight air brakes on the engine, when it should have had automatic brakes to use in doing the switching. Third. That the engineer on this occasion was negligent in making a sudden stop, which jerked Matkin off of the coal car. Defendant answered by general denial; that coupling was in good fix; that the air brakes were the proper kind and in good working order, and were carefully operated by the engineer; that the engineer did not know that plaintiff was in a position likely to be injured by a sudden stop of the train; that the plaintiff knew that the engine was equipped with only straight air brakes; that plaintiff assumed the risk in going in between the cars to uncouple them, when he knew the engineer was not using automatic air brakes;

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

that plaintiff was negligent in the manner in which he uncoupled the cars. A trial resulted in a verdict and judgment in favor of plaintiff for $35,000, and the railway company appeals.

[1] Appellant complains of the action of the court "in refusing its petition to remove the cause to the United States Court, because it charges that after the first term of court the plaintiff amended his petition, and in said amendment set up new, independent, and material causes of action not before asserted in his original petition." At the appearance term, defendant agreed not to make an application for removal to the federal court, but entered an appearance, and answered by filing a general demurrer and general denial, and the cause was continued for the term. After adjournment of court, appellee filed an amended original petition, which reiterated all the allegations of the original petition, which contained an additional charge of negligence. Thereafter, at the second term of court, defendant filed its petition and bond for removal. It was defendant's right to remove the cause to the federal court before it answered and submitted itself to the jurisdiction of the state court, but it waived that right, and it was not revived by the plaintiff amending his petition, alleging an additional ground of negligence. Plaintiff had the legal right to amend. It was such a proceeding as should have been anticipated by defendant when it agreed not to petition for removal, and when it waived its right of removal by entering an appearance in the cause. The court did not err in retaining jurisdiction of the cause.

[2] Appellant complains that the court erred in the fourth paragraph of the charge to the jury in charging as follows: "Now, if you find from the evidence that while the car in question was being kicked the plaintiff, Matkin, attempted to uncouple it from the other car, by means of the coupling lever, or pin lifter, but that the same would not work, and he was unable to uncouple it in that manner, and that he then went between the cars and sat down on the end of the coal car to lift the pin, or lug, with his hand, in order to uncouple the cars, and that in so doing he acted as brakemen ordinarily and customarily do, under such circumstances, and that he was in the discharge of his duty at the time; and if you further find that while plaintiff was so situated the engineer in charge of the engine knew, or by the exercise of ordinary care could have known, of plaintiff's situation, and that he stopped the engine and cars with unnecessary and great violence, and suddenly, causing the cars to stop with unnecessary and great suddenness and violence and kick off the car, and if you find that the engineer could have stopped the engine and cars with the brake appliances in operation on the engine without suddenness and violence, and without danger to plaintiff, and that by reason of such sudden and violent stop, if any, the plaintiff was, as the direct and proximate result of suddenly stopping the train, if it was, jerked or thrown from the car, and was run over by the wheels of the car and injured, and if you find that the engineer in stopping the cars, as he did, was guilty of negligence, then the defendant, in such case, would be liable, and you will find for the plaintiff; but, unless you so find, as explained to you, you will find for the defendant upon this issue in the case."

Three propositions are submitted under this assignment. The first is that: "It is error for the court to submit to the jury a material question to be determined by them, when there is not sufficient evidence to sustain an affirmative finding thereon."

The petition charged that the engineer on this occasion was negligent in making a sudden stop, which jerked Matkin off the coal car. The evidence showed that Matkin was head brakeman on defendant's local freight train en route from Longview to Wills Point. At Mineola it was necessary to do some switching, and in doing this it was necessary to uncouple a coal car from a box car, and it was Matkin's duty to do the uncoupling. He gave the engineer the signal to back the train, and as the train was backing he ran along beside the train, endeavoring to uncouple the cars by the pin lifter, but he could not, as the pin from some cause was fastened, and the pin lifter would not operate, and it was necessary to extract it with his hands. He then went upon the coal car, attached to a box car, to make the uncoupling; on the end of the coal car was a space of about 20 inches from the end to its end gate, and extending across the car, on which he sat to uncouple the cars. He held to the link of the hinge of the end gate on the coal car with one hand, and with the other he lifted the pin. About the time the cars were uncoupled, the train stopped with a sudden jerk, which threw Matkin forward on the track, and before he could get off the track a car ran back over his legs, crushing them so amputation was necessary. The stop was an "emergency stop," which is made just as quick as can be. The stop could have been made by a service application of the air gradually and slowly, which is the proper and customary manner in applying the air to stop the train in switching. Had the train been stopped in the proper and customary way, there would have been no danger to Matkin in the position he occupied. Such a violent stop was not ordinary and usual in switching. When the automatic coupler will not operate, it is the duty of the brakeman to go in between the cars to uncouple with his hands. The signal to stop was given by the swing brakeman after he saw that Matkin had pulled

the coupling pin. The signal he gave was for the usual stop, and was not for an emergency stop. The signal did not call for a violent and sudden stop. The engine was equipped with the "straight air" brake, and the engineer in making the stop applied all the air-braking power there was on the engine. The engineer did not see Matkin just as he made the stop, but he saw that the automatic coupler would not operate, and saw Matkin disappear between the cars, and knew he was between the cars in some position.

The evidence raised the question of negligence of the engineer in stopping the train in the manner it was stopped. While it does not show that the engineer saw the exact position Matkin occupied at the time, he knew that Matkin was in between the cars, and he should have anticipated danger to him in making such a stop. There was no material question of fact submitted by the court in the charge that was not sustained by the evidence.

[3] The second proposition submitted under said charge is that the court erred in giving to the jury two inconsistent propositions in the case. The fourth paragraph of the charge relates to the negligence of the engineer in making a sudden stop, while the seventh paragraph relates to the negligence of the defendant in equipping its engine with straight air brakes that could only be used to stop the train by putting on the air in full force of its braking power. The plaintiff pleaded negligence in the engineer in making the stop, and in the company for equipping its engine with such a brake. The evidence raised the issue as to the manner of the operation of the straight air brake in use on the engine. The engineer testified that the brake could not be used, except by applying the air with full force, while there was testimony that said air could be applied by degrees, so as to stop the train gradually. If the engine was equipped with a brake as testified to by the engineer, he could not have been negligent, and in that sense the propositions were inconsistent. But, as the plaintiff alleged the two grounds of negligence, he had the right to recover if either ground existed, and it was the court's duty to submit both issues to the jury for their determination of the existence of either. Compton v. Ashley, 28 S. W. 223; Floyd v. Patterson, 72 Tex. 202–207, 10 S. W. 526, 13 Am. St. Rep. 787; Railway Co. v. Higgins, 44 Tex. Civ. App. 523, 99 S. W. 200; Rule 4 for district courts (67 S. W. xx).

[4, 5] The third proposition presented under said assignment is: "The plaintiff would not be free from fault and entitled to recover, because 'he acted as brakemen ordinarily and customarily do, under the circumstances,' but he must have acted with ordinary care." A recovery was not authorized on the finding that "he acted as brakemen ordinarily and customarily do, under the circumstances," but the jury were required to go further and find that he was in the discharge of his duty at the time. While it is true that the test of ordinary care is not what is ordinarily and customarily done, yet, in view of our statute prescribing that contributory negligence will not absolutely prevent a recovery, the charge, if error, must be held harmless.

[6] Appellant complains that the court erred in the seventh paragraph of his charge, which reads: "Again, if you find from the evidence that the defendant company sent the engine in question out on the road and furnished the same to be operated by its trainmen, with the automatic air brake cut out of the engine, or so arranged that it would not operate on the engine, and that the engine had only straight air working on it, with which to stop or control the movement of the engine and cars while switching, and if you find that only one character of stop could be made with the straight air on the engine in question, and that such stop was made by applying all the air and all the braking power on the engine, and that the same made and did cause the engine and cars to be stopped with unnecessary and great and sudden violence, and that the same was dangerous to the trainmen, while working with the cars, in the performance of their duties in switching, and if you find that with the automatic air brake, if the same had been working on the engine, a service application of the air brake on the engine could be made, and that such application of the air would cause the engine and cars to stop slowly or gradually, and without a sudden or violent stop or jerk, and without danger to the brakemen while performing their duties in switching, and if you find that the defendant company was guilty of negligence in so sending out the engine and in furnishing the same to be used by its trainmen, in such condition, if it was in such condition, and if you find that the engineer stopped the engine and cars by applying the full braking power of the straight air appliance, and that thereby the cars were stopped suddenly and violently, and with a dangerous jerk of the cars, and if you further find that the defendant company would reasonably have foreseen that some one of its train crew would likely be injured, as the plaintiff was injured, by reason of such condition of the air brake appliance on the engine, and if you find that the plaintiff was thrown from the car, by reason of the violent and sudden stopping and jerk of the car, if any, and was injured, then the defendant company would be liable; and if you so find you will find for the plaintiff, as explained to you, or unless you find that he assumed the risk of the danger, if any, of the engine being equipped with only straight air, and not with the automatic air, as will now be explained."

The proposition submitted under this charge is: "It is error for the court to submit to the jury a group of facts, and authorize the jury to infer negligence from such facts, when such facts do not establish negligence."

We are of the opinion that the charge is not subject to the criticisms urged by appellant. The charge leaves no inference for the jury, but tells them if they find certain facts to find for plaintiff. The charge groups certain facts presented by the evidence, from which the jury were authorized to find negligence on the part of defendant. The charge based a recovery on the theory only that the engine was supplied with a straight air brake, which could not be applied with less than its full power. Whether or not to operate an engine so equipped was dangerous, and whether or not the danger to employés could have been foreseen or anticipated, were questions properly left, under the evidence, to the determination of the jury. The charge did not submit the issue of negligence on the question that a straight air brake was used, instead of an automatic brake, but the issue submitted was whether it was negligence in operating the engine with a straight air brake that could only be applied with its entire force. The evidence was conflicting on the issue as to whether or not the engine was equipped with a straight air brake that would work only by the application of its full power, or could be applied gradually. This being the nature of the evidence, there was no error in the court so charging.

Appellant complains that the court erred in the eighth paragraph, charging the jury as follows: "Or, if the defendant company knew of the condition of the engine, and that it did not have the automatic air working on it, but only the straight air, then the plaintiff, Matkin, did not assume the risk arising from such danger, if any; but if a person of ordinary care, under the same or similar circumstances, would not have continued in the service of the defendant company as brakeman to work with the said engine as such brakeman, then the plaintiff, Matkin, did assume the risk arising from such danger, if any, from the condition of the air brake appliance on the engine, and in such case knowledge on his part of the condition of the engine, and the danger therefrom, would prevent his recovering, if you find the defendant did not know that the engine only had the straight air-braking appliance working on the same."

The proposition submitted is that: "Where the defect and the danger are known, both to the company and the employé, then the employé assumed the risk, unless a man of ordinary care would have remained in the service."

[7] It was not alleged by defendant that plaintiff. assumed the risk of a violent and sudden stop of the train, but that he assumed the risk of going between the moving cars to uncouple them, knowing that the automatic brake was not working on the engine. Plaintiff knew that the automatic brake was not working on the engine, and that a straight air brake was being used thereon. He did not know that the straight air brake was defective, but supposed it could be operated by applying the air, so as to stop the train gradually and slowly, which was the usual and ordinary way it operated. So if it was negligence in defendant in furnishing a defective brake for operating its engine, there was no assumption of risk by plaintiff in going between the cars to make the uncoupling, as such was his duty. He occupied a position not ordinarily dangerous, but a safe one, as shown by the evidence, and if the engineer was negligent in the manner he made the stop plaintiff did not assume the risk of such negligence. We think the evidence fails to show that plaintiff, under the circumstances, was called upon to quit the service of defendant, or assume the risk of being injured in the manner shown by the evidence.

[8] The seventh assignment of error is: "The court erred in the ninth paragraph of the charge in charging the jury that in all actions against common carriers to recover damages for personal injuries the fact that the injured employé may have been guilty of contributory negligence shall not bar a recovery, but the damage shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. This was error, because if the plaintiff's own negligence contributed to his own injury he is barred from recovering at all." The charge embodied the language used in the statute and conformed thereto. The contributory negligence charged by defendant's answer was, in effect, that plaintiff was negligent in going between the cars to uncouple them while moving, and knowing the engineer could not see him while between the cars. The evidence was uncontradicted that it was customary and proper for the brakemen to go in between the cars to uncouple them when the cars were in motion, and the safety appliance would not work. Also that the position assumed by plaintiff while uncoupling was not a dangerous one when the stop is made in the usual and customary way, which was not done in this case. We see no error in this charge, and the assignment is overruled.

[9] The eighth assignment of error complains of the court for charging as above, because the act of the Legislature of April 13, 1909, known as the contributory negligence statute, is unconstitutional and void; and it is contended, first, that "an act of the Legislature that bestows benefits on a certain class of negligent employés is void, being contrary to the Constitution;" second, "an act of the Legislature is void which puts a burden on persons operating railroads not put on other people, when the classification does

not rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed;" third, "an act of the Legislature which allows an employé to recover damages when his injuries were caused by his own want of ordinary care is void." We do not concur in these contentions. The act under consideration "applies equally to each and every railroad doing business in the state, and in no respect does it discriminate against any particular railroad company." All railroads that are common carriers come under its provisions, and are treated alike, under the same conditions. Such being the case they are not denied the equal protection of the law. The right to pass such a law as this has often been upheld by the courts, both of this state and the United States, and we see no good reason for departing from such holdings. Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Railway Co. v. Richardson, 125 S. W. 623; Railway Co. v. Melton, 218 U. S. 52, 30 Sup. Ct. 676, 54 L. Ed. 921; Railway Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226. The law of "comparative negligence" is the law in some of the states, and the Legislature of this state had the power to make it the rule in this state, and we see no reason why it should not be enforced.

[10] It is also contended that the "title of the act shows it to be an act to declare persons operating a railroad liable, and section 2 regulates the liability of common carriers by railroads. There are some railroads that are not common carriers." The difference suggested between the caption and section 2 of the act is, we think, of no importance. The state Constitution declares all railroads are common carriers, and as such constitute a class of themselves. Section 2, art. 10, Const.

[11, 12] Complaint is made that the verdict of the jury is excessive, and the court erred in not granting a new trial. The views of appellee's counsel on this assignment are in accord with our ideas, and we adopt same, viz.: "When injured, plaintiff was a vigorous and healthy man, 30 years of age; he was a brakeman, regularly earning more than $100 a month; he was a sober, industrious, and faithful employé; he was likely to be promoted to the position of conductor with a salary of $150 a month. Both of his legs were crushed by the wheels of the car, so that they had to be amputated, one 4½ inches, and the other 5 inches, below the knee. He suffered intense physical agony, and still suffered at the time of the trial. He is wholly incapacitated to perform manual labor, and is not fitted, either by education or train-

142 S.W.—39

ing, to earn a livelihood in any other way. His mental suffering was and must always be very great, in view of his maimed and helpless condition and his blighted prospects in life. The charge required the jury to decide 'what amount of cash money would fairly and reasonably compensate' for plaintiff's injury. The jury observed the plaintiff, heard all the testimony, and decided that question. The amount of the verdict, if full compensation, is not such excessive compensation for plaintiff's awful injury as to show that it is not the result of the calm and conscientious deliberations of the jury, uninfluenced by passion or prejudice; and this is the test by which it must be measured. No incident of the trial can be reasonably claimed to have excited the passion or prejudice of the jury; they must be presumed to have acted impartially and conscientiously, in the absence of a showing to the contrary." Railway v. Shelton, 30 Tex. Civ. App. 72, 69 S. W. 656; Railway Co. v. Kelly, 34 Tex. Civ. App. 21, 80 S. W. 1073. This assignment is overruled.

There are other assignments of error, relating mainly to the refusal of requested instructions. The charge of the court was full and correct, and substantially covered the requested charges that were applicable, and the others were without merit. All assignments, not herein discussed, have been fully considered by us. They present no reversible error, and are overruled.

The judgment is affirmed.

#### On Request for Finding of Additional Facts.

[13] Appellee requests the finding of additional facts, in that we find specifically on the issue of contributory negligence of appellee, Matkin. In deference to said request, and in accordance with our views of the evidence, we conclude, as a fact, that appellee was not guilty of any negligence that contributed to his injury.

Appellant objects to our making this finding, because the jury made no such finding; and therefore this court is without authority to make such a finding as a basis for affirming the judgment. It is true there was no specific finding by the jury that appellee was not guilty of contributory negligence, but they returned a general verdict in favor of appellee which, we think, in view of its size, includes such a finding. Contributory negligence was an issue in the case, and the verdict comprehends such a finding; and we believe that we not only have the authority, but that it is our duty, to make such a finding, as it is in line with the verdict and supported by the evidence.