**HEMSELL et al. v. SUMMERS et al.**
**No. 5134.**

Court of Civil Appeals of Texas. Amarillo.
March 25, 1940.

866

James W. Witherspoon, of Hereford, J. W. Hassell, of Dallas, and Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellants.

Moss & Young, of Tulsa, Okl., and Sanders & Scott, of Amarillo, for appellees.

STOKES, Justice.

Appellee, Florence O. Summers, filed this suit against appellants, Clennon C. Hemsell and Columbian Fuel Corporation, on behalf of herself, her three minor children, and Laura L. Summers. She alleged that she was the surviving wife and her children were the surviving children and Laura L. Summers was the surviving mother of J. W. Summers, deceased; that the death of J. W. Summers was occasioned by the negligence of appellant, Clennon C. Hemsell, and that the Columbian Fuel Corporation was also liable therefor by virtue of the fact that Hemsell was its employee and that the death of J. W. Summers resulted from a collision between an automobile being operated by Summers and another automobile being operated by Hemsell, who, it is alleged, was at the time engaged in the performance of the duties devolving upon him as an employee of the Columbian Fuel Corporation. The record shows that on the 9th of October, 1937, at about 11:30 o'clock P. M., J. W. Summers was driving his automobile from his home at Dumas to the place where he was working in the oil field in Moore County. Clennon C. Hemsell was an employee in the geological department of appellant, Columbian Fuel Corporation, in connection with oil producing properties owned by it in Texas, New Mexico and Kansas. He was returning from the company's property in Kansas where he had been some few days and the two met at the point indicated when a collision occurred between their automobiles which resulted in the death of J. W. Summers.

The case was submitted to a jury upon sixty special issues, and upon the verdict returned by the jury in answer thereto, judgment was rendered in favor of appellees in the total sum of $30,890, apportioned between them by the jury in response to

appropriate special issues. Appellants filed a motion for a new trial and the same being overruled they excepted, gave notice of appeal, and the record is now before us for review.

The briefs present forty-three assignments of error and fifteen propositions of law for our consideration, the principal contentions being based upon the charges and instructions submitted by the court to the jury in connection with the special issues. Under special issue No. 54 the court asked the jury to find what sum of money, if paid now to Florence O. Summers, would reasonably compensate her for the actual damages which she sustained, if any, by reason of the death of J. W. Summers. In connection with this special issue the court charged the jury that, in arriving at the amount of actual damages, they may consider only the following items: (1) Necessary and reasonable funeral expenses paid by Florence O. Summers for her husband's funeral. (2) The amount of money that would have been used by the deceased, J. W. Summers, to support and care for the plaintiff, Florence O. Summers, for a period of 34½ years, in the manner to which she was accustomed and would expect to be cared for. This last charge or instruction was excepted to by appellants upon a number of grounds and, their exceptions being overruled, they have brought the exceptions forward in the record and it constitutes the first contention in their brief. The principal objections made to the charge were that it was on the weight of the evidence and assumed that the deceased husband would have lived 34½ years; that he would have used a certain amount of money to support and care for appellee, and that it deprived the jury of their proper and lawful discretion by giving to them a fixed mathematical formula by which they should be controlled in arriving at an answer to the special issue.

■■■ At about the close of the testimony counsel, in a conversation between them in open court, made a stipulation concerning the introduction of the American Experience Table of Mortality compiled by insurance companies. The stipulation was the result of a rather loose and indefinite conversation held between counsel in open court, but we think the effect of it was that counsel for appellants agreed that the mortality table would show that the deceased, J. W. Summers, had a life expectancy as alleged in appellees' petition

and that the American Experience Table of Mortality, not being immediately available, should be considered in evidence without the details of its formal introduction. Other than testimony concerning the manner of life, employment, habits and customs of the deceased, this is all of the evidence shown by the record concerning his life expectancy. The rule is well established in this and most other jurisdictions that, in the trial of a case of this kind, in determining life expectancy, the jury is not bound by the general averages in life insurance tables. Such tables are, in fact, of little value in determining the life expectancy of any particular person. They are estimates from the general average of the lives of many people and are perhaps of great value to life insurance companies engaged in insuring the lives of men and women, but they are of little service to a jury in determining the length of the lifetime of any particular person whose life expectancy becomes a material question. Our statute, Art. 4677, R.C.S., 1925, does not attempt to fix the damages recoverable in suits of this character, but leaves it to the jury to assess such damages as its members think proportionate to the injury resulting from death. Many such cases have been decided by our courts, however, and the rule is well established by the decisions that the damages which may be recovered under the statute are such pecuniary benefits as the plaintiff had a reasonable expectation of receiving from the deceased had he lived. City of Galveston v. Barbour, 62 Tex. 172, 50 Am.Rep. 519; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033; Ward v. Cathey, Tex.Civ.App., 210 S.W. 289; Texas-Mexican R. Co. v. Higgins, 44 Tex.Civ.App. 523, 99 S.W. 200; Gulf, C. & S. F. R. Co. v. Compton, 75 Tex. 667, 13 S.W. 667.

■■■ The effect of the charge given by the court was to take from the jury the prerogative of deciding the fact question of life expectancy of J. W. Summers, deceased. It, in effect, told the jury to fix the amount of money which he would have contributed to his wife during a period of 34½ years, if he had not been killed in the collision. The question of life expectancy of the deceased husband was not only a question of fact, but a very important one. Under our system it was unquestionably one that should have been left to the jury. In the case of Texas-Mexican R. Co. v. Higgins, supra, the court said [44 Tex.Civ.

App. 523, 99 S.W. 203]: "Hence, while mortuary tables may be taken as evidence of how long a man may live, the question in every case where one has been deprived of his life by the actionable negligence of another is left for the jury to determine from the evidence before it and the observation and experience of its members." This holding is in keeping with the rule that has consistently been adhered to by the courts of this state through practically all of its history.

▮ The charge was further objectionable because, in effect, it instructed the jury to fix the amount which the deceased husband would have contributed to the support and care of appellee "in the manner she was accustomed to and would expect to be cared for." The question with which the law is concerned in such cases and which should be submitted to the jury is the pecuniary benefits the surviving wife had a reasonable expectation of receiving during the time which her deceased husband would have lived but for his untimely death in the accident. Authorities supra. The amount which it may have taken to support and care for Mrs. Summers in the manner in which she would expect to be cared for might be entirely different from the amount which she had a reasonable expectation that her husband would be able to contribute and would have contributed to that purpose. We think the charge given by the court in connection with special issue No. 54 was subject to all of the criticisms and objections made to it by appellants and that, in submitting it to the jury, the court committed reversible error.

▮▮ In special issue No. 55 the court requested the jury to find the amount of money, if paid now in cash to Laura L. Summers, mother of the deceased, that would reasonably compensate her for the actual damages she sustained, if any, by reason of the death of J. W. Summers. In connection with this special issue the jury were charged that in arriving at the actual damages, if any, they may consider the amount of money the deceased son would have paid to his mother for her support and maintenance during the remainder of her natural life of approximately twenty years. This charge was erroneous in assuming that the surviving mother would have lived approximately twenty years. It is true the table of mortality used in the case gave her a life expectancy of 20.2 years, but the jury were entitled to consider other things beside the mortality table. The general health, appearance, customs and habits of the surviving mother were proper elements to be considered by the jury and the court should not have taken from them the prerogative of deciding a question of this character which is purely one of fact. Moreover, the jury were entitled to take into consideration the fact that the money, if any, was to be paid immediately instead of being contributed in small amounts over a period of years. This was necessary in order to arrive at the present value of the benefits to which she was entitled. It is not unreasonable to suppose that the jury would have considered that the payment of such an amount in a lump sum justified a reduction from what its total amount would have been at the end of a long period of time. Appellees contend that the appellants admitted that the mother's life expectancy was 20.2 years and, there being no other evidence in the record, the court did not err in assuming it to be such. We cannot accede to this contention. In the first place, we do not interpret the agreement to be an absolute agreement that Mrs. Summers would live 20.2 years. As we interpret the stipulation, it was only an agreement that the American Experience Table of Mortality may be introduced in evidence without the formal details incident to procuring it and actually presenting it to the jury. In the second place, as we have already stated, the table of mortality is not conclusive, even though there was no other evidence in the record concerning the probable length of Mrs. Summers' life. Such matters, under our system, are left largely to the judgment of the jurors themselves and, when a jury is assembled to try cases of this nature, the court should never take from them the prerogative of determining such issues.

▮ In special issue No. 56 the court asked the jury what sum of money, if paid now in cash, would reasonably compensate James Summers, the minor son, for the actual damages he sustained by reason of the death of his father. In connection with this special issue the court instructed the jury, among other things, that they may take into consideration the loss of love and care and fatherly advice. In this we think the court erred. It was held by our Supreme Court in International & G. N. R. Co. v. McVey, 99 Tex. 28, 87 S.W. 328, 329, that the damages recoverable in such cases

are such pecuniary benefits as the plaintiff had a reasonable expectation of receiving from the deceased had he lived. The court there said: "By pecuniary benefits is meant not only money, but everything that can be valued in money, and includes, in case of a minor child who is suing for the death of a parent, the reasonable value of such nurture, care, and education as the child would have received from the deceased parent had such parent lived. But neither sorrow for the death of the deceased relative * * * nor the loss of his or her society * * * are recoverable in such cases. [Houston City St. R. Co. v. Sciacca, 80 Tex. 350, 16 S.W. 31; Taylor, B. & H. Ry. Co. v. Warner, 84 Tex. 122, 19 S.W. 449, 20 S.W. 823.]" Although the statute does not make such distinction as is indicated by the above quotation, our courts have consistently held that no recovery can be had for the loss of parental society, companionship and other like elements. The reason for the holding is that such elements of loss are incapable of pecuniary estimation. The distinction between the loss of parental care, nurture and education on the one hand, and the loss of society, companionship and other like elements on the other hand, is apparent. The former is capable of being estimated in monetary value. It is a matter of common knowledge that it costs money to rear, nurture and educate children. The amount varies according to the ambition, ability and earning capacity of the parents and the station in life maintained by them. The amount of money devoted to the nurture, care and education of children by those occupying the various positions in society is capable of fairly accurate calculation. Not so, however, with reference to emotional elements, such as the society and companionship of a parent. These are incapable of any sort of monetary evaluation. The same is likewise true in regard to the natural love and affection which a parent bears toward his child or the child toward the parent. It proceeds from the emotions and for that reason must be classed in the same category as society and companionship. We agree with appellants concerning the charge of the court in this connection and sustain their sixth proposition.

▆ Under the 57th special issue the court requested the jury to find what sum of money, if paid now in cash to Patricia Summers, a minor daughter of the deceased, would reasonably compensate her for the actual damages she sustained, if any, by reason of the death of her father. In connection with this special issue the court charged the jury that in arriving at the amount of actual damages, if any, they may take into consideration the amount that would have been contributed to the education of Patricia Summers through some higher school of learning. The only testimony in the record concerning the matter of educating the children was given by Mrs. Summers who testified that her husband was devoted to the children; that she and her husband had discussed the matter of educating them and that he was quite anxious for them to finish high school and have college training. Even if it had been proper for the court to suggest to the jury specifically that they may take into consideration the item of the expense of a college education, this testimony would not have furnished a sufficient basis for it. What we have said in regard to other similar items mentioned by the court in his charge to the jury is sufficient to show, we think, that in giving this charge the court also committed error. The charge was on the weight of the evidence and exceeded the prerogative of the court in designating to the jury specific items which fell entirely within the category of fact questions. The jury should have been permitted to decide these matters from the evidence before them without an assumption by the court that such expenses would have been incurred.

▆ The next contention made by appellants likewise has reference to the charge of the court. Appellants excepted to the charge because it failed expressly to exclude any consideration by the jury of such elements as sorrow and grief of the surviving children on account of the death of their father. As we have stated, the only elements recoverable in cases of this nature are those of a pecuniary nature. It is well settled that no recovery can be had for sorrow and grief over the loss of a loved one, pungent and distressing although these sentiments may be. In the absence of some instructions to the jury of a nature which excludes a consideration by it of such elements, it is only natural that they should regard them as being highly proper as elements of recovery. It was held in International & G. N. R. Co. v. McVey, supra, that the jury should always be instructed concerning such matters and we think the court should have so instructed

the jury in this case. Appellees contend in this connection that the exception concerning the failure of the court so to charge the jury was too general; that no specific instruction having been tendered by appellants with the request that it be given to the jury, the refusal of the court to give it was not reversible error. Without passing upon the question of whether or not it was necessary that a special charge be prepared and presented to the court in order to preserve the exception, we will observe that it is the better practice to do so. It can easily be done in a definition or explanation of the term 'support and maintenance' and thus avoid the rule which forbids the giving of a general charge in a case submitted upon special issues. Thurmond v. Chandler, 125 Tex. 34, 81 S.W.2d 489. Appellants presented and requested the court to give to the jury a number of special issues upon the question of sole proximate cause, one of which was as follows: "Do you find from a preponderance of the evidence that the lights on the car that was travelling ahead of the Summers car were not the sole proximate cause of the collision in question?" The evidence showed there was a car travelling in front of the Summers car. Hemsell testified it was only a short distance in front, while the witness, Sasser, who was in the car with Summers when the accident occurred, testified that it was some distance down the road ahead of the Summers car. The only manner in which the front car could have been the sole proximate cause of the collision and the death of Summers was that Hemsell became blinded by the brightness of its lights and that seems to be the basis upon which the special issue was requested. Hemsell testified that, although the lights on the front car were bright and blinded him, yet he remained on the right hand side of the highway. If that is true, then, according to his testimony, the lights on the front car could not have been the sole cause of the accident. The only other witness who testified concerning the matter was Sasser and, according to his testimony, the front car was so far ahead of the Summers car that it could not have been responsible for the accident. There was, therefore, no basis for the submission of special issue No. 11 requested by appellants.

■ ■ The other special issues requested by appellants on the question of sole proximate cause referred to the acts and conduct of the deceased, J. W. Summers, or the manner in which his car was being operated. The court submitted special issues as to each of them upon the question of proximate cause of the injury and it is held by our courts that 'proximate cause' being broader and more comprehensive than sole cause and more proof and a greater burden of evidence being required to prove that an act of negligence was the sole cause than merely to show that it was a proximate cause, it is not error to refuse to submit the question of sole proximate cause as to such matters where the same question is submitted as to the proximate cause of the injury. Carter v. Ferris, Tex. Civ.App., 93 S.W.2d 504. We do not think the record now before us reveals any condition which required of the court a submission of the question of sole proximate cause.

■ The next contention made by appellants is without merit and we discuss it only in view of another trial. It is to the effect that the court erred in refusing to submit a requested special issue presented by appellants upon the question of the intervention of a new and independent cause or agency. We do not think that question is presented by the record or the testimony. The rule is that new and independent cause cannot be ascribed to the acts or omissions of the parties to a personal injury suit or to those involved in the catastrophe for whose injury or death the suit is maintained. The requested special issue referred to acts and omissions of J. W. Summers who was killed in the collision and to the manner in which his car was being operated. Summers being involved in the catastrophe, and his injury and death being the basis of the cause of action, his acts or omissions could not constitute new and independent agency. Magnolia Petroleum Co. v. Owen, Tex.Civ.App., 101 S.W.2d 354, and authorities there cited.

■ ■ The only issue remaining which we deem it necessary to discuss has reference to the argument of counsel for appellees in discussing the case before the jury. The effect of the remarks objected to was to criticise counsel for appellants for introducing the petition and judgment in a divorce suit which had been filed by Florence O. Summers a year or two after the marriage of herself and her deceased husband. We think the argument was highly improper. It was not an explanation of any testimony nor a criticism of the demeanor of any witness. It concerned the

act of counsel for appellants in introducing the evidence. The record in the divorce case was admissible and was admitted without objection. Counsel are privileged to discuss the conduct of an adversary and to denounce acts which have been shown by the evidence or which are fairly deducible therefrom but neither litigants nor their attorneys should be denounced or criticised for introducing any sort of admissible evidence. That is their right. In doing so counsel is only performing his duty to his client and the court. Objection was made to the argument for the reason that it was improper and inflammatory and in response to the objection counsel for appellee made the statement that he intended for it to burn. In response to the objection the court remarked that the objection would be overruled; that it was a matter for the jury to determine. Obviously this was error. The improper remarks having been made by counsel, the court should have instructed the jury not to consider them for any purpose.

A number of other assignments of error are presented and insisted upon by appellants but what we have said sufficiently indicates that, in our opinion, the judgment should not be permitted to stand. For the errors pointed out, the judgment of the court below will be reversed and the cause remanded.