STERLING ANTHRACITE COAL COMPANY *v.* STROPE.

Opinion delivered October 8, 1917.

1.  APPEAL AND ERROR—PERSONAL INJURY ACTION—SUFFICIENCY OF THE EVIDENCE—FINDING OF JURY.—In an action for damages for personal injuries, the finding of the jury in favor of the plaintiff will not be disturbed on appeal, where the verdict is based upon evidence of a substantial character.

2.  NEGLIGENCE—PERONAL INJURIES—CONCURRING CAUSES.—Deceased, a coal miner sustained serious burns, due to defendant's negligence, and while lying in bed as a result of such burns, contracted pneumonia and died. *Held,* an instruction was proper which told the jury that defendant was liable for the death of deceased who died from pneumonia, which disease was wholly or in part caused or superinduced by the burns.

3.  APPEAL AND ERROR—REPEATING INSTRUCTIONS—PERSONAL INJURIES. —It is not error for the court to refuse a correct instruction, where the points involved therein are covered by other instructions given by the court.

Appeal from Johnson Circuit Court; *A. B. Priddy,* Judge; affirmed.

*Sellers & Sellers,* for appellant.

1.  It was error to admit proof of other acts of negligence by the fire boss.   6 Thompson on Negl., § 7785; 25 Atl. 426; 32 Pac. 1020, 11 S. E. 776; 44 Am. Rep. 693; 115 Mass. 240; 58 Ark. 468; 81 *Id.* 591; 91 Atl. 202; 29 Cyc. 611.

2.  The testimony fails to show that the burns were the proximate cause of death.   149 Pac., *Antler* v. *Cox,* 32 Cyc. 745; 177 S. W. 705; 116 Ark. 59; 3 Bailey on Personal Injury, 2136; 79 Ark. 437; 119 *Id.* 357; 69 *Id.* 405; 89 *Id.* 58; 97 *Id.* 576, 584; 104 *Id.* 59; 75 *Id.* 472; 66 *Id.* 68.   See also 90 Ark. 210; 92 *Id.* 138; 104 *Id.* 506; 91 *Id.* 260; 66 *Id.* 68; 88 *Id.* 289; 87 *Id.* 579.

Where a new cause intervenes the original negligence is too remote.   97 Ark. 160; 29 Cyc. 493, and cases *supra.*

3.  The court erred in its instructions.   119 Ark. 349; 75 S. W. 868.   Negligence is never presumed.   4 Labatt, M. & S., § 1600; 96 Ark. 206; *Ib.* 500; 74 *Id.* 22; 46 *Id.* 567; 44 *Id.* 529.

See also 113 Ark. 64; 87 *Id.* 243.

*George O. Patterson* and *J. H. Evans,* for appellee.

1.    The proof shows that death was the result of the burns, caused by the negligence of the fire boss. Proof of other acts of negligence was admissible.    54 Ark. 30; 87 *Id.* 257.

2.    There is no error in the instructions. They state the law of the case.    97 Ark. 585; 4 Am. & E. Ann. Cases, 150; 127 Iowa, 844; 6 Thompson on Negl., § 7006; 28 Ark. 159; 50 *Id.* 549; 73 *Id.* 570; 100 *Id.* 269; 101 *Id.* 424; 108 *Id.* 425; 100 *Id.* 199.

HART, J..    This is a suit instituted by Lottie Strope, administratrix of the estate of Fred Strope, deceased, against the Sterling Anthracite Coal Company for damages to the estate of Fred Strope, deceased, and to his widow and children for his death, alleged to have been caused by the negligence of the coal company.    The facts are as follows:

In February, 1916, the Sterling Anthracite Coal Company was operating a coal mine near Clarksville, Arkansas, and Fred Strope was one of its employees engaged in mining coal.    According to the testimony of the plaintiff, on the morning of the 18th day of February, 1916, the fire boss of the company went down into the mine and inspected the working places for gas.    After finishing his inspection he came back to the entry of the mine and marked the working places O. K., which meant that they were free from gas and safe for the miners to commence work.    It was the duty of the fire boss to make this inspection and mark the results upon the board.    If the working places are found to contain gas so as to be unsafe it was the duty of the fire boss so to mark them on the board in order to warn the miners not to go to work there.    On the morning in question, Fred Strope came to the entry of the mine to go to work as usual.    The board was marked O. K. and he proceeded down into the mine to go to work.    When he got near the face of his working place he lighted his lamp and placed it on his cap.    This caused an explosion of the gas and he was severely in-

jured and died in eleven days thereafter.  A more particular description of his injuries will be stated later.

On the part of the defendant company it was shown that on the morning in question the fire boss made an inspection of the mine as usual and found the working place of Fred Strope to contain gas.  Before the miners came to work he went to the entry of the mine and made his report on the board which was there for that purpose. He made a report that the working place of Fred Strope contained gas and was unsafe.  This was done in the usual manner and served as a notification to the miners not to go to work at their usual working place.

The jury returned a verdict for the plaintiff and the defendant company has appealed.

(1)  The ground of negligence relied upon for a recovery by the plaintiff was the negligence of the company in marking the working place of Fred Strope safe on the morning in question when in fact it was unsafe.  We have only attempted to give the substance of the evidence on this phase of the case and it is not necessary to set it out in detail or to determine where the preponderance of the evidence lies.  This question has been settled by the jury in favor of the plaintiff and under the settled rules of this court we can not disturb its verdict, there being evidence of a substantial character upon which to base it.

(2)  At the request of the plaintiff the court gave the following instruction:

"If Strope died from pneumonia and the pneumonia was wholly or in part caused or superinduced by the burns then Strope's death was in law caused by the burns. In such case if you find for the plaintiff you should find for her for both the suffering and death of Strope."

It is contended first by counsel for the defendant that there is no testimony to warrant the jury in finding that the pneumonia was caused by the burns, and, second, that if the pneumonia was caused by the burns, the burns were only a remote and not the proximate cause of Strope's death

It was shown that Strope was thirty-one years of age at the time he was injured and was an exceedingly stout and healthy man, never having been addicted to any kind of dissipation. After he was burned Dr. Earl Hunt examined him and attended him until his death which occurred eleven days later.

Doctor Hunt testified that Strope was suffering intensely when he went to see him; that he was burned on both arms and across the chest and neck and all of his face and back of the neck and on his back lower than the shoulder blades; that further down there were two or three spots as large as a man's hand on the small of his back; that all of the skin on both arms came off; that his whole face and ears were burned and his hair singed; that his finger tips were charred a little, that he saw that Strope was a big, strong fellow and was not dissipated; that he told Strope's wife that he thought he had a chance to recover from the burns; that Strope had to lie on his back and couldn't turn over; that on the day he died he developed hypostatic pneumonia; that this was a secondary condition which might develop after any serious injury that necessitates a patient staying in bed; that it is a secondary pneumonia which comes after injuries which necessitates a patient staying in bed. He was asked, "What did that pneumonia result from in this particular instance?" He answered, "Well, I should say it resulted from the fact that he was lying in bed and was in a burnt condition." He stated further that if persons are burned over the chest they are more likely to have pneumonia; if over the bowels they are more likely to have a very violent diarrhoea, and if they are burned over the kidneys they are likely to have inflammation of the kidneys; that Strope was burned over the chest, arm and face and that he attributed the pneumonia to these burns and to the necessary recumbent position.

Again he stated that hypostatic pneumonia is necessarily secondary pneumonia following something that has preceded it; that the burns and the necessary recumbent position caused the pneumonia.

This testimony brings the case clearly within the rule laid down in the case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Steel,* 129 Ark. 520. In that case the court held (from syllabus):

"Where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury. A railway will be liable for the death of its servant whom it negligently injured, where both the injury and typhoid fever contributed to cause his death." Therefore the court did not err in giving this instruction.

(3) It is next insisted that the court erred in refusing to give instruction number two, asked by the defendant. The instruction is as follows:

"Negligence is not presumed, but the burden is upon the plaintiff to make out her case by a preponderance of the evidence. The fact that deceased was injured in the mine, if you find that he was so injured, and later died, raises no presumption whatever that the defendant was negligent."

At the request of the defendant, however, the court did give instruction number eleven, which is as follows:

"Proof that the mine, rooms and entries were in the condition alleged in the complaint would not justify a verdict for the plaintiff without proof that such condition was caused by defendant's negligence as charged. You cannot presume or infer negligence alone from the condition or the accident or both."

Besides this the instructions given by the court at the request of the plaintiff bases the right of the plaintiff to recover upon proof by her of the acts of negligence alleged in her complaint. In one of the instructions given, the court, after stating the assignments of negligence, said:

"Now, if any one or more of these assignments of negligence are proven and you believe that such negligence so proven caused the injuries to Strope, and as a

result of such injuries he died, your verdict will be for the plaintiff.''

So it will be seen that the instruction in question was covered by the instructions given by the court.

It is next insisted that the court erred in refusing to give instruction number eight, asked by the defendant. It reads as follows:

''You are instructed that the plaintiff can recover only upon proof of the negligent acts complained of, that such acts were negligent, that they were a cause of the injury to the deceased, that such injuries directly caused his death. Proof of other acts, although negligent, would not justify a recovery by plaintiff.''

The court gave instruction number three, asked by the defendant. It reads as follows:

''The plaintiff alleges that the deceased was injured in a mine by the explosion of gas; that he lived for a period of eleven days thereafter and then died from the effects of the injuries received in the explosion. In order to justify you in finding for the plaintiff you must find from a preponderance of the evidence that the death of the deceased was the direct or proximate result of the injuries received, and you must further find that the injuries alleged to have been received in the explosion were caused by the negligence of the defendant as set out in the complaint.''

In this instruction the jury was substantially told that the negligence warranting a recovery is the negligence charged in the complaint. In the instructions given for the plaintiff the plaintiff's right of recovery was based upon the allegations of negligence alleged in the complaint and the allegations of the complaint are substantially referred to and stated to the jury. Thus it will be seen that there could have been no mistake on the part of the jury as to upon what acts of negligence it must base its findings against the defendant.

It is also insisted that the court erred in refusing to give instruction number twelve, as requested by the defendant. The instruction reads as follows:

"The defendant was not required to use every possible precaution to avoid injury to the deceased, but was only required to use such reasonable precaution to avoid accidents as would have been adopted by prudent persons prior to the accident; and before you could find for the plaintiff the proof would have to show that defendant failed to use such care and that such failure was a cause of the injury alleged and that such injury resulted directly in the death of the deceased."

At the request of the plaintiff the court gave instruction number six.  It is as follows:

"The defendant was not an insurer of the safety of Strope, but it owed him the duty to exercise ordinary care to provide him a safe place in which to perform his duties and this includes the entry ways in its mine to his place of work and to keep same free from dangerous accumulations of gas.  This duty to use ordinary care to provide Strope a safe place to perform the duties of his employment included the duty of reasonable inspection of the mine, its entries, rooms and working places, and of using such means as ordinary prudence dictates as proper to safeguard the lives and limbs of its employees.  If defendant, its agents, servants or employees failed to perform such duty, then such failure was negligence."

The court also gave instruction number five.  It reads as follows:

"Before you can find for the plaintiff the proof must show not only the acts complained of and that they were negligent as defined in these instructions, but the proof must further show that such negligence directly caused the injury and that such injury resulted directly in the death of deceased and unless you have such proof you should find for defendant."

Thus it will be seen that the duty of the defendant to the plaintiff was fully explained to the jury in these instructions.

No further grounds for a reversal of the judgment are set out in the defendant's motion for a new trial.

It follows that the judgment must be affirmed.