**SAN ANTONIO PUBLIC SERVICE CO. v. MITCHELL et al.  (No. 6680.)\***

(Court of Civil Appeals of Texas. San Antonio. Feb. 8, 1922. Rehearing Denied March 8, 1922.)

1. Appeal and error ⊕⇒715(1)—Court cannot consider evidence discovered by appellant subsequent to adjournment of trial term.

The Court of Civil Appeals can only look to the transcript in determining the rights of the parties, except as to matters of jurisdiction, so that it cannot consider testimony not incorporated in the statement of facts which appellant claimed to have discovered, since the adjournment of the court before which the cause was tried.

2. Death ⊕⇒17—Injury weakening resistance to disease germs proximate cause of death.

An injury which weakened the powers of resistance to tuberculosis germs so that they attacked the lungs of the injured person was

the proximate cause of the death where no new cause was shown to have intervened between the injury and the death.

**3. Death ⊚══17—Injury aiding disease concurrent cause of death.**

Where an injury inflicted by defendant's negligence upon a woman who had incipient tuberculosis so weakened her body that it could not resist the attacks of the disease germs, which caused the death of the woman, the injury became a concurring cause of the death.

**4. Trial ⊚══352(1)—Special issue held to require finding injury was efficient cause of death from disease.**

In an action for the death of a woman from tuberculosis, claimed to have resulted from an injury negligently inflicted by defendant, which weakened her resistance to the disease, a special issue whether the negligence of defendant directly caused or contributed to the death was not objectionable for failing to require a finding that the negligence was an efficient cause of the death.

**5. Trial ⊚══186—Charge negligence need not have been immediate cause of death is not on the weight of the evidence.**

A charge that the negligence of defendant need not have been the immediate cause of the death to render defendant liable therefor, if it was an efficient cause of the death, was a statement of the law, and not a comment on the evidence.

**6. Trial ⊚══260(1)—Special charges already clearly covered by court need not be given.**

Special charges requested by defendant, which, in so far as they embodied the law, were clearly given by the court, were properly refused.

**7. Trial ⊚══82—Objection held not to support proposition testimony was based on conjecture.**

An objection to testimony by a physician because he stated that death might follow, which was not the proper medical criterion, since cases were not tried on what might happen, was vague and indefinite, and does not support the proposition that the testimony was speculative, and was not confined to a statement of results that were reasonably probable.

**8. Evidence ⊚══505—Expert testimony as to injury as cause of disease held not to be speculative.**

Testimony by a physician that the pain caused by an injury would weaken the patient, and leave her subject to any infection—that it might weaken the patient, but would not always do it—was not objectionable as a surmise.

**9. Evidence ⊚══127(1)—Complaints of pain are not hearsay.**

The complaints of patient during sickness as to pain and suffering may be testified to, and are not classed as hearsay.

**10. Evidence ⊚══471(13)—Testimony wife was helpless is fact, not conclusion.**

Testimony by plaintiff that his wife was helpless from the date of her injury was a statement of fact, and not a conclusion.

**11. Death ⊚══99(4)—$10,000 for mother's death held not excessive.**

A verdict allowing $10,000 damages for the death of a woman, $7,000 to her minor child, and $3,000 to her husband will not be set aside as excessive where plaintiffs' evidence showed she had enjoyed good health prior to her injury, and defendant's argument the verdict was excessive was based on its evidence that, when injured, she was suffering from tuberculosis in an advanced stage.

**12. Courts ⊚══89—Precedents are of little value in determining excessiveness of verdict.**

Precedents are of small value in deciding whether a verdict is excessive, since the size of the verdict is a question of fact, and every case must be governed by its own peculiar circumstances.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by E. J. Mitchell and others against the San Antonio Public Service Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Templeton, Brooks, Napier & Brown and J. R. Locke, all of San Antonio, for appellant.

Newton & Woods, Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

FLY, C. J. This is a suit for damages instituted by E. J. Mitchell and his wife, Estella Mitchell, against appellant, alleging that Mrs. Mitchell was seriously and permanently injured through the negligence of appellant in stopping its car at a point where there was no landing place, and the track was elevated some two or three feet above the grade of the street, and Mrs. Mitchell, in the nighttime, sought to alight from the car, and fell, and was seriously injured. In an amended petition it was alleged that Mrs. Mitchell had died since the suit was begun, and E. J. Mitchell, for himself and as next friend of his minor child, Edward Leonard Mitchell, prosecuted the suit. The court presented the cause to a jury on eleven special issues, and on the answers thereto rendered judgment in favor of the appellees for $10,-000, of which $3,000 was in favor of E. J. Mitchell and $7,000 in favor of Edward Leonard Mitchell.

[1] Appellant seeks through a motion to have this court to consider certain testimony, not incorporated in the statement of facts, but which it claims to have discovered since the adjournment of the court before which the cause was tried. Such a proceeding would be without precedent or authority in Texas, and, we think, would be a dangerous practice, and subversive of the long and wisely established proceedings in appellate courts

in this state, whatever may be deemed proper in the courts of other states.

"The transcript is the source from which appellate tribunals obtain their knowledge of the facts involved in the controversy between the parties before them, as well as the source from which they derive their knowledge of the questions upon which it is their duty to pronounce judgment. The reports contain many cases where the parties acted as if they were ignorant of this principle, and this excuses the statement of a principle so plain as to scarcely excuse its expression in words. * * * If the transcript does not contain all that is essential to show error, the appeal will fail, since errors will not be presumed to exist, and a radically imperfect transcript can not show error." Elliott, App. Procedure, § 186.

There are several Texas decisions in which it is held that the appellate court can only look to the transcript in determining the rights of the parties, and must always be governed thereby, except as to cases involving jurisdiction, upon which question the statute permits matters to be heard aliunde the transcript. American Ins. Co. v. Murphy (Tex. Civ. App.) 61 S. W. 956; Sanchez v. Railway (Tex. Civ. App.) 90 S. W. 689. We are not authorized to reverse judgments on the ground of newly discovered evidence. This can only apply to a trial court.

The first proposition in the brief, under assignments of error 25, 26, 27, and 28, assails the sufficiency of the evidence to show that the tuberculosis from which Mrs. Mitchell died was induced by the injuries claimed to have been inflicted through the negligence of appellant. This contention necessitates an investigation and review of the evidence. E. J. Mitchell testified, and there was no direct contradiction of his testimony, that on June 4, 1919, about 11 o'clock p. m., he and his wife were on a car belonging to appellant for the purpose of going from the city of San Antonio to a point at or near Collins garden. When they reached the point of their destination, instead of the car stopping at the usual place, where there was a graveled place, and where the track was level with the street, the car passed the regular stopping place, although E. J. Mitchell had given the stop signal a block back for Garland avenue, where they wished to alight. Mitchell had his baby in his arms, and his wife followed him to the front door to get off. At that place the track was elevated about two or three feet above the street level, and there were weeds about the track, so that they could not know of the elevation at night. Mitchell stepped off with the baby, and, realizing how bad a step it was, he called to his wife to be careful, but she had already followed him, and she fell, one foot out and the other doubled under her. He helped her up, and she said she was not hurt "very bad." The motorman shut the door and moved away, and appellee helped her home, where she fainted just before she got in, and appellee carried her in and placed her on her bed. Her mother and appellee undressed her. Appellee telephoned for the doctor of appellant, and he came and treated her until he died a few days afterward. The regular place for passengers to alight at Garland avenue was perfectly safe, but the car passed that, and stopped at an elevated place among the weeds. That the car had passed the regular place was unknown to appellee. Mrs. Mitchell was pregnant at the time, but that fact was unknown to appellee. Mrs. Mitchell was a healthy woman before she fell, but was in a bad condition after her fall until she died, on April 11, 1920, about 11 months after she was hurt. She was confined to her bed about 5 or 6 months before she died. She gave birth to an infant on March 6, 1920, about 9 months after she was hurt. The child was very sick when born, and died on June 28, 1920. Appellee swore that prior to the accident she was in perfect health, and had never had a doctor with her before that time, so far as he knew, except when she gave birth to her first child, and when she had influenza during the epidemic of 1918. It was in evidence that Mrs. Mitchell was in excellent health after she recovered from the influenza, and never had any cough until after she was hurt. Her cough began about 3 weeks after she was injured, and she grew weaker and weaker until she died. She was examined by Dr. Stout, an expert specialist, in 1918, and he stated that the examination did not show tuberculosis. There was sufficient evidence to show that Mrs. Mitchell was apparently a healthy woman before she was injured, and that if she died with tuberculosis it developed afterwards, and was the result of the injuries.

There was, as usual, conflict in the medical testimony, but all of the physicians who saw Mrs. Mitchell after her injury testified that her right leg was bent or flexed, and that her injuries might have produced pulmonary tuberculosis, which some of the testimony tended to show she had at the time of her death. There was testimony to the effect that Mrs. Mitchell was in apparent good health when she attempted to get off the street car; that she had been in good health for weeks previously; that she fell in alighting from the car, and never was well afterwards, and finally died. Even though she may have had organic troubles which would some time in the future have caused her death, still the testimony is sufficient to show that her death was greatly hastened by the negligence of appellant.

[2, 3] If, as the jury must necessarily have found, the injury to Mrs. Mitchell so weakened her powers of resistance to the attacks of the tuberculosis germs that they seized upon and destroyed, or impaired, her

lungs, and thus hastened her death, then the proximate cause of her death was the negligence of appellant. No new cause was shown to have intervened between the injury inflicted by appellant and the death of the injured woman, and appellant cannot shield itself from the effects of its negligence by proof that Mrs. Mitchell had incipient tuberculosis before her injury which developed fatally afterwards. If, as the testimony tended to show, the injury fanned the flames of consumption into activity in the lungs of Mrs. Mitchell, and so weakened her body that it could not resist the attack of the germs, the injury was a proximate cause of the death of the woman. If consumption destroyed the life of the woman, it was aided efficiently by the injury, which became a concurring cause in the destruction of her life. Cohen v. Rittimann (Tex. Civ. App.) 139 S. W. 59; Railway v. Groner, 43 Tex. Civ. App. 264, 95 S. W. 1118, and, 51 Tex. Civ. App. 65, 111 S. W. 667. In the last-cited case Mrs. Groner had consumption, and the negligence shown upon the part of the railway company was in failing to have its waiting room sufficiently heated, by reason of which she contracted cold and died. The court held:

"While, as stated, there was testimony to the effect that consumption could not be caused by exposure to cold, the same witnesses further testified that a severe cold or any other cause which lowered a patient's vitality, might allow the germs to find lodgment and the disease to begin its ravages, when, except for this lowering of vitality, the patient might have 'walled up' the germs and thrown them off without injury. If, therefore, appellant's negligence proximately produced a condition of health rendering Mrs. Groner susceptible to the disease (she being otherwise in good health), and as a natural and probable consequence she in fact became affected with the disease and her death resulted therefrom, appellant would be liable; or even if Mrs. Groner, at the time of her exposure to cold, was afflicted with the disease, and appellant's negligence reasonably and naturally aggravated it and hastened her death, appellant would be liable, if such death, as submitted by the court, was a proximate result of the negligence charged. In such case appellant's negligence would be at least a contributing cause of the death, and in such event the negligence cannot be excused on the ground that Mrs. Groner's death would have occurred later."

It is true that a writ of error was granted from that decision, and it was reversed, but upon the sole ground that the court erred in holding that a continuance should not have been granted by the trial court. The cause was tried in the lower court again, and, on a second appeal to the Court of Civil Appeals, the court held:

"We think appellees' special charge, to the effect that if appellant's negligence aggravated or was the means of developing consumption in the deceased, even though she was predisposed to that disease and died therefrom, plaintiffs would be entitled to recover, was correct for the reasons given in our opinion on the former appeal. If appellant's negligence hastened the the death of Mrs. Groner, it certainly could not escape liability altogether merely because she would ultimately perhaps have died of consumption, but, of course, the amount of the recovery would be less than if her death had been caused solely by its negligence." Railway v. Groner, 51 Tex. Civ. App. 65, 111 S. W. 667.

A writ of error was refused by the Supreme Court. The law as declared in the Groner Case is undoubtedly correct, and disposes of the second, third, fourth, fifth, sixth, seventh, eighth, and ninth propositions of law, but we will discuss them seriatim.

One of the issues presented by the court which is vigorously assailed by appellant is:

"If you answer 'yes' to the foregoing questions, then did such negligence directly cause or contribute to the death of Mrs. Estella Mitchell?"

In connection with that issue, and immediately following it, the jury was instructed that if—

"the negligent act (if any) of defendant or its employees in charge of the car should have directly caused or contributed to the death of Mrs. Mitchell, such act must have been an efficient cause of her death. Yet such negligent act need not have been the immediate cause of her death. But it is essential that her death should have been a natural consequence of such negligent act, if any. It is not necessary that defendant or its said employees, if negligent, should have foreseen the particular result, if any. It is sufficient if, by the exercise of that degree of care required of defendant with respect to the safety of its passengers, the defendant and its said employees might have foreseen that some injury might naturally result from such negligent act, if any. The negligent act, if any, need not have been the sole cause of her death. It is sufficient if it directly contributed to her death. And if you answer 'Yes' to questions 1 to 5, inclusive, and if you further find from the evidence that on June 4, 1919, Mrs. Mitchell was suffering from tuberculosis, and that upon said date she received any of the injuries which are alleged in the petition, and if you further find from the evidence that such injuries (if any) aggravated her said disease and hastened her death, then you will answer 'Yes' to question 6."

[4, 5] Issue 6, herein copied, is objected to in the second proposition because it authorized the jury to answer 'Yes' if they believed that appellant's negligence contributed to Mrs. Mitchell's death, without being required to find that the negligence of appellant was a prominent and efficient cause of such death. That objection is fully met by the instructions given in connection with the issue, where the jury was told that "such negligent act (if any) must have been an efficient

cause of her death." The charge of the court, in connection with issue 6, did not, as claimed in the third proposition, authorize a verdict against appellant "if they believed that said negligence contributed to the death of Mrs. Mitchell in the slightest way, and even though they did not find from the evidence that such negligence directly caused her death." The instruction is not open to any such forced construction, as is apparent from an inspection of it. There is nothing misleading about it, nor was it a comment on the evidence in the instruction to say that the negligence "need not have been the immediate cause of her death." It is the law. The fifth proposition is based on false premises, and a construction placed on the instruction not justified by its language.

The sixth, seventh, eighth and ninth propositions are overruled. They are mere repetitions of the unfounded claims in the propositions that precede them. They are all fully met and refuted by the decision in the Groner Case herein cited as well as other decisions. Beauchamp v. Saginaw M. Co., 50 Mich. 163, 15 N. W. 65, 45 Am. Rep. 30; Railway v. Higgins, 44 Tex. Civ. App. 523, 99 S. W. 200; Ray v. Railway, 40 Tex. Civ. App. 99, 88 S. W. 466; Railway v. Williams (Tex. Civ. App.) 117 S. W. 1043; Transit Co. v. Edwards, 55 Tex. Civ. App. 543, 118 S. W. 838.

Speaking of a charge similar to the criticized sixth issue, this court held in Railway v. Josey (Tex. Civ. App.) 95 S. W. 688:

"Another criticism of the said charge is that it authorized a recovery if such negligence merely contributed to the result. We think in this regard the charge stated correctly the general rule, when it charged that a recovery could be had for negligence which caused or contributed to the result."

The issue with the instructions accompanying it contained the law applicable to the facts.

[6] The tenth and eleventh propositions are overruled. The special charges requested in so far as they embodied the law were clearly given by the court, and they were properly refused.

[7] In the twelfth proposition appellant seeks to assail certain testimony of Dr. Redmond, a witness for appellees, which is as follows:

"The pain would weaken the patient, lower her vitality, and leave her subject to an infection of that kind—tuberculosis, or anything of that kind might follow. It would weaken the patient, as I say; it might do it; it would not always do it; but, as the patient grew weaker, confined to the house with this pain, and unable to get out, the germ would start, as they did, and destroy life; it only paves the way, weakens the patient, lowers their resistance to an infection."

The bill of exceptions shows that the objection urged to the testimony was:

"He says it might follow; now we object to that as not being the proper medical criterion; we do not try cases on what might happen or what possibly might happen."

The objections were vague and indefinite, but they are not followed in the proposition where it is stated that—

"Such testimony was purely speculative and was not confined to a statement of results that were reasonably probable, and was calculated to lead the jury to believe that they were authorized to find that her death resulted from tuberculosis, although they believed from the evidence that this was only a possibility and did not believe from the evidence that such a result was one that would reasonably or probably follow."

[8] Of course the bill of exceptions forms no adequate basis for the objections embodied in the proposition, for they are totally different from those in the bill of exceptions. However, if the proposition had followed the bill of exceptions, and thus offered some reason for its existence, it could not be sustained, for, in the first answer objected to, the witness swore positively that pain would weaken the patient, lower her vitality, and leave her subject to an infection of that kind. That covered the case, and was unobjectionable. It was stated as a fact, and not a surmise.

[9] The thirteenth proposition is utterly without merit, and is overruled. The complaints of patients during sickness as to pain and suffering may be testified to, and are not classed as hearsay. Statements of the location of an injury and existing pain made to a physician during treatment or upon examination, and for the purpose of ascertaining the extent and nature of the injury, may be testified to by the physician. Elliott on Ev. § 1992. There was nothing in the evidence to indicate that the declarations of pain were made with any view or desire to create testimony for a trial, but the evidence indicates sincere complaints of pain and suffering.

[10] The fourteenth proposition complains of the refusal of the lower court to strike out testimony of E. J. Mitchell to the effect that his wife "was helpless from the date of her fall." It is overruled. The evidence was not a conclusion or an opinion, but the statement of a fact, just as though he had said his wife was deaf or blind.

[11] The fifteenth, sixteenth, and seventeenth propositions attack the verdict for excessiveness. This is based on the assumption that Mrs. Mitchell was, at the time of her injury, "suffering from tuberculosis in an advanced stage." This position rests on the assumption that the witnesses for appellant testified truthfully, and the witnesses for appellees swore to falsehoods. The jury must have credited the testimony of Drs. Mitchell, Stout, Redmond, Shropshire, and

others, and rejected the testimony of the witnesses for appellant as they had the right to do, and to conclude that Mrs. Mitchell was not a sick woman when injured, and that her sickness and death were caused by the negligence of appellant. If, as found by the jury, the negligence of appellant caused the death of Mrs. Mitchell, there is nothing in the size of the verdict to indicate that it was founded on prejudice or passion, and this court is in no position to entertain an attack upon it.

[12] Appellant cites a number of cases on excessive verdicts, some of which would sustain the present verdict, but it may be stated that precedents are of small value in deciding such questions, as the size of a verdict is a question of fact, and each case must be governed by its peculiar facts.

The judgment is affirmed.