TEXAS EMPLOYERS' INS. ASS'N v. JI-MENEZ et al.  (No. 7228.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 19, 1924. Rehearing Denied Dec. 17, 1924.)

**1. Master and servant ⊂⇒417(4)—Trial by court limited to claim presented to Industrial Accident Board.**

Industrial Accident Board has exclusive jurisdiction of all claims for compensation under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and district courts only appellate jurisdiction, so that, on trial de novo therein, plaintiff is limited to particular claim presented to board.

**2. Master and servant ⊂⇒414—Proceedings required before Industrial Accident Board stated.**

No particular proceedings for compensation before Industrial Accident Board are required by statute, intelligible statement of matter in controversy, identifying interested parties and giving facts necessary to understand nature of matters in controversy, and rulings and deci-

sions on facts presented, being sufficient, and board may hear witnesses, though it will consider ex parte statements under oath.

**3. Master and servant ⊂⇒417(5)—Entire question of totality and permanency of injury before court on appeal from Industrial Accident Board.**

Appeal from ruling of Industrial Accident Board is properly a suit to set aside award in which entire matter is reopened, and entire question of totality and permanency of injury is before district court for adjudication.

**4. Master and servant ⊂⇒417(4½)—Pleading on appeal from Industrial Accident Board need only set out jurisdictional facts.**

Pleading in district court, on claimant's appeal from Industrial Accident Board, need only set out jurisdictional facts, such as giving of notice of injury within time required, statement of injuries, fact that employer was subscriber at time of injury, and right to compensation under Act.

**5. Master and servant ⊂⇒373—Compensation recoverable for death caused concurrently by disease and "injury."**

Under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) defining "injury" compensation may be recovered for employé's death, caused concurrently by disease and injuries received in course of employment.

**6. Master and servant ⊂⇒417(4)—On appeal from Industrial Accident Board claimant may plead case more fully and develop all evidence.**

That trial in district court, on appeal from judgment of Industrial Accident Board denying compensation, is de novo does not deprive claimants of right to plead case more fully than required before board and develop all his evidence, plea in district court not being independent cause of action, setting up matters that could not have been passed on by board under claim presented to it.

**7. Master and servant ⊂⇒417(4) — Claim pleaded in district court held not different from that presented to accident board.**

Claim pleaded in district court, on appeal from judgment of Industrial Accident Board denying compensation, that employé's death was result of injured and weakened body and nervous system, caused by strain, cold, and exposure, and inhalation of ammonia fumes from pipes about which he was working, held not different from that presented to accident board for death from strain caused by lifting heavy pipes, claim being for same death, caused concurrently by disease and injuries received in course of employment, though more fully set forth in pleading in district court.

**8. Appeal and error ⊂⇒742(4)—Proposition that facts in hypothetical question must be stated with some definiteness held too general.**

Proposition that essential facts in hypothetical question must be stated with some definiteness *held* true, but too general to point out error which appellate court can consider, es-

pecially where appellant made no objection to testimony.

**9. Evidence ⬦553(1)—Hypothetical question as to cause of pneumonia and death held without material error.**

Hypothetical question to physician as to cause of pneumonia and death of laborer working on pipes on roof in cold weather *held* sufficient to call witness' attention to material matter in evidence supposed to cause pneumonia and death and without material error, though testimony as to weather conditions was indefinite; jury not being required to accept answer.

**10. Master and servant ⬦418(5)—Cross-examination of employer's physician as to statements by injured employé held not reversible error.**

Cross-examination of employer's physician as to employé's statement that he had strained side *held* not reversible error, in view of same evidence elicited from witness and others without objection and his letter to employer containing same statement.

**11. Appeal and error ⬦1050(1)—Appellant cannot complain of evidence given by same or other witnesses elsewhere without objection.**

Litigant cannot complain or ask for reversal because of evidence given by same or other witnesses elsewhere without objection.

**12. Evidence ⬦558(3)—Cross-examination of physician as to patient's history of case held warranted by detailed testimony on direct examination.**

Employer's physician having testified for defendant insurance carrier as to injured employé's symptoms and condition in detail on direct examination, and referred to history of case received from patient, whom he testified gave no history of having inhaled ammonia fumes, claimants could cross-examine him as to full history given him by patient, whose illness, resulting in death, witness had testified was not caused by his work.

**13. Master and servant ⬦417(5)—Issues liberally construed on trial de novo on appeal from Industrial Accident Board.**

District courts, on appeal from Industrial Accident Board, liberally construe issues, as board may have done in hearing evidence, without thereby doing violence to procedure in trials de novo.

**14. Master and servant ⬦405(4)—Finding death caused by injuries in connection with exposure held sustained by evidence.**

Finding that employé's death was caused by injuries received in connection with exposure to cold wind and ammonia fumes while unscrewing pipes on roof of building, *held* sustained by circumstantial as well as direct evidence.

**15. Evidence ⬦528(1)—Death from pneumonia caused by strain and exposure to cold and ammonia fumes may be proved by physicians.**

That death was caused by pneumonia resulting from strain and exposure to cold wind and ammonia fumes, may be proved by physicians.

**16. Appeal and error ⬦1001(1)—Jury's findings not disturbed though based on evidence of slight probative force.**

While neither expert witness nor jurors may be permitted to conjecture as to what may possibly ensue from given state of facts, and witness must be confined, and verdict based on reasonable probabilities, it is jury's province to pass on facts and witnesses' credibility, and appellate court cannot disturb finding, however slight probative force testimony in its support may have.

On Motion for Rehearing.

**17. Master and servant ⬦418(5)—Appellant requesting no charges cannot complain of finding as to cause of employé's death.**

Appellant requesting no charges cannot complain of jury's finding. supported by evidence, that employé, in course of employment, sustained strain, which was proximate cause of his contracting pneumonia resulting in death.

**18. Appeal and error ⬦996—Jury's province to reconcile and draw proper inference from testimony.**

It is jury's province to reconcile and draw proper inference from testimony.

**19. Courts ⬦107—Supreme Court's mere recommendation that judgment of Court of Civil Appeals be reversed as recommended by Commission of Appeals settles no law.**

Supreme Court's recommendation that judgment of Court of Civil Appeals be reversed and that of county court affirmed as recommended by Commission of Appeals, without approving letter's opinion, settles no law.

**20. Master and servant ⬦373—Body strain before exposure to cold and ammonia fumes, held "damage or harm to physical structure of body" proximately causing pneumonia resulting in death.**

Body strain or wrench, before exposure to cold wind and ammonia fumes while unscrewing pipes on roof of building, *held* "damage or harm to the physical structure of the body," authorizing finding that it was proximate cause of contracting pneumonia resulting in death, though mere act of getting wet is not per se any injury to body.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage —Damages.]

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Proceedings by Teresa Salazar de Jimenez and others for compensation, under Workmen's Compensation Act, for death of Matias Jimenez, employé, opposed by the Texas Employers' Insurance Association, insurance carrier. From a judgment for plaintiffs, on appeal from a judgment of the Industrial Accident Board denying compensation, the insurance carrier appeals. Affirmed.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Eskridge & Williams, of San Antonio, for appellant.

Samuel Belden, Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for appellees.

COBBS, J. Appellees presented their claim for compensation to appellant, Texas Employers' Insurance Association, on one of its blank forms, which in part reads as follows:

"This is to notify you, Texas Employers' Ins. Ass'n [name of employer or association or company with which employé is insured], that I claim compensation from you under the Employers' Liability Act of Texas on account of the death of Matias Jimenez [name of deceased employé] on the 20th day of February, 1923, which resulted from injuries sustained on the 26th day of January, 1923, while in employ of Merchants' Ice & Storage Company [name of employer], San Antonio [city or town]. The place of injury was [name or description of building or place] ice plant and cold storage. The cause of death was [describe cause of injury] lifting large heavy pipe, and received mortal strain, injuring shoulder, chest, lungs and other bodily injuries."

Matias Jimenez, deceased, was an employé of the Merchants' Ice & Cold Storage Company to San Antonio, Tex., covered by insurance issued by appellant.

The Industrial Accident Board heard and considered the claim, and rendered judgment in part, as follows:

"That the said above-named beneficiaries have failed to sustain the burden imposed upon them by law to establish to the satisfaction of the Board that the said Matias Jimenez, deceased, suffered any injury whatever on January 26, 1923, which thereafter produced his death; and therefore his said claims for compensation must be and the same are hereby in all things denied and refused, and it is so ordered, adjudged, and decreed by the Board."

The appellees appealed from such ruling to the Thirty-Seventh District Court of Bexar county, and by their pleading, among other things, alleged:

"On or about January 26, 1923, Matias Jimenez, Sr., * * * received injuries which resulted in his death upon February 20, 1923, and the work that he was doing and the conditions under which he had been laboring had an injurious effect upon him and directly caused and contributed to his death.

"While in the course of said employment the said Matias Jimenez, Sr., strained and injured his right shoulder, chest, and lungs, and he was subjected to cold and exposure, and he was working with and about pipes containing ammonia, and he inhaled the fumes thereof, and thereby his shoulders, chest, lungs and entire body and nervous system was severely injured and weakened and his death was a direct result thereof."

Appellant answered by plea to the jurisdiction, in said plea claiming that since no complaint had been made before the Industrial Accident Board concerning any conditions under which said Matias Jimenez was working, that so much of plaintiffs' cause of action as depended upon cold, exposure, or the inhalation of ammonia fumes was a new cause of action, asserted for the first time in the trial court, and that inasmuch as the Industrial Accident Board had exclusive original jurisdiction of such cause of action that the trial court was without jurisdiction thereover on this appeal from the award of the Industrial Accident Board; and, further, by demurrer, denial, and special allegations to the effect that the death of said Matias Jimenez was due to natural causes being unrelated to his employment by said Merchants' Ice & Cold Storage Company.

The cause was tried with a jury, upon special issues, which issues were answered adversely to the defendant in the trial court, and judgment entered against the defendant below and in favor of the plaintiffs, on the 18th day of January, 1924, "that the plaintiff, Teresa Salazar de Jimenez, do have and recover in her own behalf for her own use and benefit the sum of $1,417.96 of and from the defendant, Texas Employers' Insurance Association; and it is further ordered, adjudged, and decreed by the court that the plaintiffs, Matias Jimenez, Federico Jimenez, Marcelo Jimenez, Petra Jimenez, Rita Jimenez and Josefina Jimenez, suing herein by their next friend, Teresa Salazar de Jimenez, do have and recover of and from the defendant, Texas Employers' Insurance Association, the sum of $1,417.96 [said recovery by said six minor children to be divided equally between said six children, making $236.32⅔ each]; together with interest thereon at the rate of 6 per cent. per annum from the 19th day of January, 1924, until paid."

[1] The first, second, third, and fourth propositions are practically the same and are based upon assignments of error Nos. 1 and 6 in amended motion for new trial. The point presented is that the Industrial Accident Board has exclusive jurisdiction of all claims for compensation under the Workmen's Compensation Act, and that district courts have only appellate jurisdiction and in such courts the trial is de novo; and that on a de novo trial, in an appellate court, the plaintiff is limited to the particular and identical claim presented to the Board and to no other new or additional claim not there presented for the Board's adjudication. We think that a sound and correct proposition of law.

Then the question here presented for determination is whether more than one claim or cause of action was presented. We have freely used, in the consideration of this case, the excellent little work, "Huson's Workmen's Compensation."

[2, 3] An examination of the Industrial

Accident Board statute shows that no particular proceedings are required. All that is required there is an intelligible statement of the matter in controversy, identifying the interested parties and giving such facts as are necessary for the Board to understand the nature of the matters in controversy, and that its rulings and decisions relating to the claim should be on the facts presented. In its proceedings witnesses may be heard, though the board will consider ex parte statements under oath. The right of appeal from the action of the Board is given to either aggrieved party. It has been held that an appeal from the ruling and decision of the Board is analogous to an appeal from a justice's court to a county court, as in both cases the trial is de novo. Strictly speaking it is not an appeal, but a trial and is to proceed as though no hearing had been had before the Board. It is a suit, though called an appeal, to set aside an award and the issue to be tried is the full determination of the full amount of the insurer's liability that might have been determined under the Act. The entire matter is reopened as though there had never been a trial, and the entire question of the totality and permanency of the injury is before the court for adjudication.

[4] In the pleading in the district court it is only necessary to set out the jurisdictional facts, such as that the notice had been given, within 30 days from date of injury; a statement of the injuries and that the employer was at the time of the injury a subscriber and that he is entitled to compensation under the terms of the Act.

[5] Under the Act compensation may be recovered for the death of an employé which was caused concurrently by a disease and by injuries received in the course of his employment.

[6] Injury is, within the purview of the Act, defined as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." This plea filed in the district court is not an independent cause of action, setting up matters that could not have been passed upon by the Board under the claim presented in the first instance. The point is too technical and finely drawn to impress us. Appellees may not have introduced all the evidence before the Board to establish all the essential facts that caused the death. The suit was for injuries that caused the death.

One filing a claim before the Board is not required to put in all his evidence, but, because the trial in the district court is de novo, he is, by no authority to which we have been referred, deprived of his right to plead his case more fully than required before the Board and develop all his evidence. In the one case a method is provided for quickly and simply determining a claim which, when it reaches a court of record, with well-defined rules of pleading, a different rule of procedure is prescribed. Huson's Workmen's Compensation Law; Lumberman's Reciprocal Association v. Behnken (Tex. Sup.) 246 S. W. 72; Millers' Indemnity Co. v. Hughes (Tex. Civ. App.) 256 S. W. 334; Texas Employers' Ins. Ass'n v. Peterson (Tex. Civ. App.) 251 S. W. 572; Ætna Life Ins. Co. v. Rodriguez (Tex. Civ. App.) 255 S. W. 446.

[7] We do not find, as contended by appellant, that one claim was made to the accident board and another and different claim presented in the district court on appeal in this de novo trial. It goes without argument that that cannot be done. That suggestion of appellant is not tenable, for the reason that the claim presented was for compensation for the death of the employé; in both instances, the insurer is the same company. There was but one death and but one claim therefor, which perhaps may have been more fully set forth in the pleading, but, nevertheless, the claim is for the one death "caused concurrently by a disease and by injuries received in the course of his employment."

[8] The fifth proposition, that the essential facts in a hypothetical question must be stated with some definiteness, is a very broad statement and is true, but this proposition does not seem limited to any question propounded to any witness nor is there any statement presented under it; but, turning a few pages further on to the argument under the fifth proposition, we find the complaint lodged against the following question propounded by appellees' attorney to Dr. G. M. Calloway:

"Q. Doctor, I want to put a hypothetical question to you: The evidence in this case shows that the employé, Jimenez, who was a Mexican laborer, had been working at the Merchants' Ice & Cold Storage plant for something like 2 years, and was a man in good health, a steady worker, and on the 25th day of January he was assigned to work on top of the roof, that you heard the witnesses describe, on the pipes, on the north side of the building, when the weather was more or less cold and somewhat cloudy, and under the conditions and all that you have heard the witnesses describe, and that then the employé, when he first worked there that afternoon from 12:30 to 5:30, came back to attempt to work the next morning he couldn't go back to work, and had to stop at 12 o'clock the next morning, went back to his home and went to bed and was confined to his bed continuously until February 20th, that would be about 26 days later, when he died of pneumonia. I will ask you to state what, in your opinion, what would you say was the cause of this pneumonia; what was the cause of his death?"

The objection was "because of the indefinite character of the testimony with reference to weather conditions and the tempera-

ture. * * *; and also objected to the witness being referred to the testimony of former witnesses, and also asked that the witness be compelled to detail the conditions which he thought would bring about the results which he proposed to testify to, both as to temperature, humidity, and length of time," and further objected to said question as invading the province of the jury. The court overruled the objections and the witness was permitted to testify. There was no objection made to the answer of the witness, nor any motion to strike it out. Such a proposition is too general to point out any error that this court can consider, especially since appellant made no objection to the testimony itself. Railway v. Stonecypher, 25 Tex. Civ. App. 569, 63 S. W. 949.

[9] The appellant, after making his objection alone to the form of the question, and not to the testimony itself, proceeded to and did cross-examine the witness on the same subject, putting to him both direct and hypothetical questions.

The witness' answer to the question complained of was:

"Working with the pipes, particularly when you consider the ammonia that had to be inhaled, would sometimes make the risk of the congestion of the lung greater than the temperature and the atmosphere would induce, but, given the history of death by pneumonia, I am almost obliged to say, on expert testimony, that he would have pneumonia, but whether the temperatures were high or not, and because it is not always incident to cold weather."

There is no merit in the proposition presented, and there is no material error in the question propounded. It was sufficient to call the attention of the witness to the material matter hypothetically that was supposed to cause pneumonia and death. The hypothetical question was based upon evidence before the jury, and a proper subject of inquiry before the jury. The jury may or not accept it because their verdict, much like that of an expert himself, is based upon opinion predicated upon all the facts related hypothetical or otherwise. Ry. v. Henefy (Tex. Civ. App.) 99 S. W. 884; Ry. v. Mills, 34 Tex. Civ. App. 127, 78 S. W. 11; Ry. v. Bohan (Tex. Civ. App.) 47 S. W. 1050. It is appropriate here to copy a portion of what Chief Justice Fly said in Ry. v. Mills, supra:

"The object of all testimony is to prove the very fact to be found by the jury, and it is no usurpation of the powers of a jury to prove that fact. In order to obtain a certain opinion from an expert, it is absolutely essential to assume the existence of the facts necessary to elicit the opinion; and, in order that the opinion should prove of any value, it should be the very one that it is desired the jury should form."

What we say here disposes, for the same reasons, of appellant's sixth proposition.

[10] The seventh proposition complains of questions propounded to Dr. O. M. Timmins on cross-examination, a witness called and examined by appellant. Dr. Timmins had been representing the Texas Employers' Insurance Company for 7 or 8 years, in an official way, and was testifying to an investigation and examination of deceased made by him in his official capacity, in connection with the injuries. On cross-examination by appellees the following questions were asked:

"Q. He also said he had strained his right side, didn't he?

"To which question the defendant then and there objected on the ground that the answer thereto would be hearsay, self-serving, and no part of the res gestæ involved in this suit;

"That the court overruled such objection of the defendant and permitted the witness to answer, and the witness did answer as follows:

"A. He said something to that effect, that he had a pain in his side from pushing, thought he had hurt his side from pushing, like that, and he gave a history at the same time of having been feeling badly for several days before that."

Dr. Timmins further testified:

"On or about the 26th day of January, 1923, I had occasion to see a man named Matias Jimenez. I saw him at my office. I had never seen him before that time. I had never had a conversation with any one concerning him before that time. He came to my office and I made an investigation of him. * * *"

The proposition is subject to the same objections as appellant's fifth and sixth propositions.

The same evidence was elicited elsewhere from this and from one other witness, without any objection whatever being advanced by appellant. On cross-examination a letter which Dr. Timmins had written was read in evidence without objection, and this letter contained precisely the same statement. The letter was addressed to the appellant, Insurance Association, and it began as follows:

"Gentlemen: On January 29th I visited Mr. Jimenez, who complained that he had strained his side in lifting. * * *"

[11] Likewise, Dr. Haggard, another of appellant's witnesses, testified without objection on cross-examination that:

"He alleges to have sustained an injury to the muscles of the right side on January 26th, while working for the Merchants' Ice & Cold Storage Company."

There is no rule better established than the one declaring that a litigant cannot complain or ask for a reversal because of the admission of evidence when the same witness or other witnesses gave the same testimony elsewhere without any objection. This court has so consistently applied this rule that the citation of authorities would be a superfluity.

[12] Appellant pleaded that Jimenez' death

was not caused by any injury and was unrelated to his employment. Defendant below brought Dr. Timmins as its witness in an effort to establish this defense, and Dr. Timmins described the symptoms and condition of Jimenez in detail on direct examination, even referring in some instances to the history of the case that he received from the patient. From his examinations, and from the history given him, he testified that in his opinion the man's illness was not caused by his work. After appellant went into the matter in this manner on direct examination, it was certainly proper for appellees to attempt to weaken the doctor's diagnosis by showing on cross-examination the full history which the patient had given the doctor. On direct examination the doctor testified that the patient did not give a history of having inhaled ammonia fumes. Such testimony gave appellees the right to show on cross-examination just what history was given by the patient. As the doctor was basing his opinions at least in part on the history or lack of history given by the patient, appellees had the right to show what history the patient actually gave. In the case of Cohen & Co. v. Rittimann (Tex. Civ. App.) 139 S. W. 59, a case cited in appellant's brief, it is said:

"Where a party, on a direct examination, starts an inquiry into a transaction, he cannot object to the whole matter being brought out on cross-examination."

The eighth and ninth propositions are too general for any purpose. We take it that they mean to contend that the court should have instructed a verdict for appellant upon the testimony.

[13] A more liberal construction is placed upon cases arising out of the Industrial Accident Board than in other cases. Those boards are organized for speedy disposition of cases. There are no technical rules for the introduction of evidence, and no records are preserved to be reviewed in respect thereto. The trial courts, in considering these appeals, without doing violence to the procedure of district courts in the trials de novo, extend a liberal rule of construction to the issues as the Board may have done in the first place in hearing the evidence.

[14] In connection with the expert testimony there were many circumstances to show that decedent's death was caused by injuries received in connection with his exposure. He had been in good health for a long period, and a steady, good worker and labored for 2 years with the Ice & Cold Storage Company. His work had been in the inside of the building, but he was taken from his usual work and sent upon the roof of the building to work on the north side and was thus exposed to the cold wind. The weather was cold and cloudy, and the pipes he was required to work with were ammonia pipes, and, in handling them, he came in contact with the fumes of ammonia, and every physician testified that inhaling ammonia fumes is a distinct irritant, for it chills the mucous membrane and makes the lungs more susceptible to congestion. Just prior to going upon the roof deceased was working on the inside of the building.

Dr. Timmins' written statement declares:

"On January 29th, I visited Mr. Jimenez, who complained that he had strained his side in lifting * * *"; and he also testified: "He said something to the effect that he had suffered a strain; that he had a pain in his side from pushing, thought he had hurt his side from pushing."

Dr. Haggard stated:

"He alleges to have sustained an injury to the muscles of the right side on January 26th, while working for the Merchants' Ice & Cold Storage Company."

The testimony of other witnesses showed that Jimenez was doing work of such a nature as could readily cause such an injury. He was unscrewing pipes ranging from 2 to 4 inches in diameter and from 18 to 20 feet in length and taking them down. Such pipes are heavy. The weight of such pipes could readily cause such an injury as Jimenez said he received. Furthermore, it took the two men five hours to unscrew and remove four of the pipes, and this justifies the inference that the connections were very tight or rusted so as to require great time and effort in releasing them. They had one large Stilson wrench, but witness Rosas testified: "I used the Stilson and Jimenez used some of the smaller wrenches." Attempting to unscrew pipes rusted together with a small wrench might readily result in a strain or injury. We merely mention these circumstances to show that the jury had circumstantial as well as direct evidence to sustain their answer to issue No. 2.

[15] Whatever we may think about the value of the testimony to show that death was caused by pneumonia in the manner stated, the claim is established by the medical experts, and such doctrine has been sustained by the courts. Schaff v. Shepherd (Tex. Civ. App.) 196 S. W. 232; San Antonio Gas & El. Co. v. Ocon (Tex. Civ. App.) 130 S. W. 847; In re McPhee, 222 Mass. 1, 109 N. E. 633; Linnane v. Ætna Brewing Co., 91 Conn. 158, 99 A. 507, L. R. A. 1917D, 77; Dupre v. Atlantic Refining Co., 98 Conn. 646, 120 A. 288; Sterling Anthracite Coal Co. v. Strope, 130 Ark. 435, 197 S. W. 858; Bayne v. Riverside Co., 181 Mich. 378, 148 N. W. 412; Nicoll v. Sweet. 163 Iowa, 683, 144 N. W. 615, L. R. A. 1918C, 1099, Ann. Cas. 1916C, 661; Barnes v. Fuel Co., 283 Ill. 173, 119 N. E. 48; Kilburn v. Railway, 289 Mo. 75, 232 S. W. 1021; T. & N. O. Ry. v. Francis (Tex. Civ. App.) 165 S. W. 40; Pullman Co. v. McGow-

an (Tex. Civ. App.) 210 S. W. 842; San Antonio Public Service Co. v. Mitchell (Tex. Civ. App.) 238 S. W. 265.

It is entirely proper to make such proof by physicians. Railway v. Harris (Tex. Civ. App.) 172 S. W. 1129; Railway v. Grenig, (Tex. Civ. App.) 142 S. W. 139; Railway v. Abbott (Tex. Civ. App.) 146 S. W. 1078; Railway v. Taylor, 58 Tex. Civ. App. 139, 123 S. W. 714; Block v. Railway, 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; Taylor v. Railway, 256 Mo. 191, 165 S. W. 331.

[16] We have not only read the authorities that appellant requests us to carefully examine, but all others cited by it. It is quite true, as held in Ry. v. Powers, 101 Tex. 161, 105 S. W. 491, that:

"Neither expert witnesses nor the jurors may be turned loose in the domain of conjecture as to what may by possibility ensue from a given statement of facts. The witness must be confined to those which are reasonably probable, and the verdict must be based upon evidence that shows with reasonable probability that the injury will produce a given effect."

But it must be remembered that it was the province of the jury to pass on the facts and credibility of the witnesses, not ours. What we may have thought of the probative force of the testimony in the first instance, if we had been trying the case, is beside the question, for the jury selected by the parties has made its finding and we cannot disturb it, however, slight it may be.

Having given very careful consideration to this case, we find no reversible errors properly assigned, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

[17] The difficulty with appellant, in the zeal of argument and conviction, is that it has overlooked the fact that the jury found, and had evidence to support it, that Matias Jimenez, Sr., on January 25, 1923, did "sustain a strain in the course of his employment which was the proximate cause of his contracting pneumonia and his death." Appellant requested no charges. If that be true, the appellant seems to concede as the jury found, the strain was the proximate cause of the pneumonia which was the cause of his death.

[18] Appellant, in his motion, says:

"Under the opinion last referred to, Jimenez cannot recover for death from pneumonia caused by exposure to the elements in the course of his employment. He can recover then in this cause only upon a showing that he received a strain which was the proximate cause of the pneumonia itself, and, as before stated, if we admit that he did receive some character of strain, there is not one scintilla of evidence in the record from which it might be inferred that such strain naturally and proximately produced the pneumonia from which he died."

Here, again, he is wrong, for the testimony was sufficient to sustain the jury's finding. It is the jury's province to reconcile the testimony and draw the proper inference therefrom.

[19] Appellant cites the case of Texas Employers' Insurance Association, plaintiff in error, v. J. B. Jackson, 265 S. W. 1027, recently decided by the Commission of Appeals, but a purported copy is furnished us by appellant, who insists that it controls the disposition of this case. The Supreme Court did not approve the opinion, but merely recommended "that the judgment of the Court of Civil Appeals be reversed and that of the county court affirmed."

We do not know what the Supreme Court thinks of the opinion and reasoning of the Commission of Appeals, and no law is settled by such an indorsement. That there is no conflict, however, with this case is too obvious to cause the necessity of any discussion.

[20] The Commission of Appeals held that getting wet was not a "damage or harm to the physical structure of the body," and that is true. The act of getting wet alone is not per se any injury to the body. In this case the jury found that the employé suffered a strain or injury in his employment, which was the "proximate cause of his contracting pneumonia and his death." It seems inconceivable that any one for a single instant would argue that a sufficient strain to the body would not come under the definition of a "damage or harm to the physical structure of the body," and there is nothing to the contrary in the cited case of the Texas Employers' Insurance Association v. Jackson, for it declares:

"It may also be claimed that, under the definitions of the terms 'injury' or 'personal injury' and 'injury sustained in the course of employment,' contained in the amendment of 1917, all injuries for which compensation may be had must necessarily be accidental injuries. These questions, however, it is not necessary here to decide. For the injury sustained by defendant in error is not such as is contemplated by the act. It is not 'damage or harm to the physical structure of the body' from which disease or infection naturally resulted."

There was an actual connection between the conditions appellee was working under and his subsequent pneumonia. His body had received a damage or harm before he went upon the house by the strain, which caused an injury to his body, and he was subjected to the inhalation of the fumes of ammonia, which also was a distinct irritant to the membrane of the lungs. Clearly the disease demonstrates that there was some injury somewhere in the structure or membranes of the body that caused the consequent disease.

The strain, or wrench, to his body in his

weakened condition, and the chilling of the membranes by the cold exposure, the inhaling of the ammonia, and the conditions of his employment, inflicted the damage and harm to the physical structure of his body, which indicates that disease and pneumonia grew out of the injury and the exposure, the conditions of his employment.

There is nothing new in appellant's contention, and the motion is overruled.